UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, PAUL DEMEO, PAUL MESSANA, INDIVIDUALLY AND AS NEXT FRIEND OF RAYMOND MESSANA AND ARIANA MESSANA<br><br>Plaintiffs,<br><br>v.<br><br>ACRES OF WILDLIFE CAMPGROUND, INC.<br><br>Defendant | Docket No. 04-11913 MLW |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/ OR SUMMARY JUDGMENT**

The Defendant, Acres of Wildlife Campground, Inc. ("Acres of Wildlife") hereby moves for judgment on the pleadings and/or summary judgment. In support of its motion, Defendant states as follows.

**I.    Introduction**

On July 1, 2002, while she was sleeping in a tent at the Defendant's campground, a tree fell and hit Renee Messana in the head, causing personal injuries. Her daughter and son, who were in the tent, did not see the tree fall. Her husband, Paul Messana, and her son from a previous marriage, Paul DeMeo, were in a tent on the other side of the campsite and did not see the tree fall.

Nevertheless, each of the family members have brought claims against Acres of Wildlife. It is the position of Acres of Wildlife that many of these counts do not set forth recognized causes of action, fail to state a claim upon which relief may be granted and/or are not supported by genuine issues of material fact in the record. Further, all claims of Renee and Paul Messana are barred by the release language contained in the lease

1066286.1

agreement. Therefore, judgment may be properly entered on all claims.

**II.    Background**

The campground is a rustic and natural "wildlife" area, consisting of 250 campsites. Michael Baptista and his sister, Elaine Baptista Burnham, own Acres of Wildlife. The company has always been family-owned since it was originally purchased by Michael and Elaine's parents in 1980. The campground has a lake and additional amenities, including a recreation hall and playgrounds.

Paul and Renee Messana, citizens of Massachusetts, were long-time seasonal patrons of the Campground, which is located in Steep Falls, Maine. Prior to the accident, they had camped there for twelve years, and had the same seasonal campsite (site 20 on Raccoon Road), for the five years prior to the accident.

At approximately 7:45 a.m. on July 1, 2002, while Renee was sleeping in a tent with Ariana and Raymond on the outer edge of Campsite 20, a tree fell on Ms. Messana, hitting her primarily on the head, rendering her unconscious. The tree that fell, one of many in the 300-acre campground, was located fifty feet away from the Messanas' campsite in a heavily wooded area, away from any other campsites and away from any campground activity.

Upon hearing of the accident, Elaine Burnham immediately called 911. EMTs camping at the campground attended to Ms. Messana until the ambulance arrived. Ms. Messana was then rushed to Maine Medical Center in Portland, Maine, for treatment. At the hospital, emergency physicians determined Ms. Messana suffered skull and sinus fractures with extensive swelling around the eyes. She was placed in the intensive care unit for six days before being discharged.

Renee was bed-ridden for a while following the accident. Fortunately, her fractures healed in due course, and she had successful sinus obliteration surgery in May of 2003. Luckily, none of the family members were significantly hurt during the accident.

On or about September 1, 2004, Plaintiffs filed a Complaint, consisting of fourteen counts, asserting the following causes of action: negligence (Count I), breach of implied warranty of habitability (Count II), interference with quiet enjoyment of premises (Count III); negligent infliction of emotional distress (Counts IV – VIII), impairment of earning capacity (brought by Renee and Paul Messana) (Counts IX – X) and Loss of Consortium (brought by all Plaintiffs except Renee) (Counts XI – XIV).

The parties have completed discovery and the instant motion is before the Court. Defendant hereby moves for the entry of judgment on all claims.

### III.   Applicable Law

Federal courts sitting in diversity apply the choice of law rules of the state in which it sits. See Allstate Ins. Co. v. Occidential Int'l, Inc., 150 F.3d 1, 3 (1st Cir. 1998)(citing Klaxson Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941)). Because this Court sits in Massachusetts, it applies Massachusetts' choice of law principles.

#### A.   Counts I, IV - XIV

Under Massachusetts choice of law principles, tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action. See Dunfey v. Roger Williams Univ., 824 F.Supp. 18, 20 (D.Mass. 1993). The place where the injury occurred "is the place where the last event necessary to make the actor liable for an alleged tort takes place." Id. at 21.

In this case, the campground is located in Maine. The last event allegedly necessary to make Acres of Wildlife liable, namely the tree falling, occurred while Renee was in a tent on the campground. Therefore, absent any unusual circumstances suggesting that Massachusetts has the more significant relationship to the Messanas' tort claims, Counts I and IV – XIV are governed by Maine law.

**B.     Count III**

Count III appears to be a contract claim based upon an alleged right of quiet enjoyment implied in the lease agreement. Under Massachusetts choice of law principles, contract claims are governed by "the substantive law of the state which has the more significant relationship to the transaction in litigation." Id. at 20. Factors to be considered are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the residence of the parties; (6) the needs of the interstate and international system; (7) the relevant policies of the forum; (8) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; (9) the protection of justified expectations; (10) the basic policies underlying the particular field of law; (11) certainty, predictability and uniformity of result; and (12) ease in the determination and application of the law to be applied. See id.

In this case, as the Defendant's Statement of Material Facts demonstrates, the contract was to be performed by both parties in Maine; the location of the subject matter, namely the leased premises, was located in Maine; Defendant is a Maine corporation; and the contract was most likely signed in Maine.

Further, the policies of predictability and uniformity of result, as well as ease of determination and application of the law, are served if a lease concerning a particular parcel of real estate, or a leasehold interest, is governed by the State in which the property is situated. Therefore, absent any choice of law provision contained in the lease agreement, Defendant respectfully suggests that this Court apply Maine law to Count III.

### C. Count II

Count II appears to be a statutory claim for breach of implied warranty of habitability. Although statutory, the claim sounds in contract, and is predicated on a contractual lease agreement. Defendant respectfully suggests that for the reasons stated above, Maine law should likewise apply to Count II.

## IV. Negligence (Count I)

Plaintiffs bear the burden to demonstrate that Acres of Wildlife owed them a duty of care, that the campground breach the duty of care, and that the Plaintiffs suffered harm that was proximately caused by Defendant's breach. See Durham v. HTH Corp., 870 A.2d 577, 579 (Me. 2005)(citation omitted). In Maine, one in control of land owes a duty of reasonable care to provide safe premises to all persons lawfully on the land, and a duty to use ordinary care to ensure the premises are safe and to guard against all reasonably foreseeable dangers, in light of the totality of the circumstances. See Coffin v. Lariat Assoc., 766 A.2d 1018, 1020 (Me. 2001).

In this case, all Plaintiffs have each asserted claims of negligence. However, none of the Plaintiffs other than Renee were directly injured or harmed by the alleged negligence of Acres of Wildlife. See Champagne v. Mid-Maine Medical Center, 711 A.2d 842, 846 (Me. 1998) (discussing difference between indirect victims and direct victims). Rather, as

bystanders, Renee's family members are "indirect victims" with emotional distress injuries. Mr. Messana also has a derivative claim for loss of consortium. Because they were indirect victims, judgment on the pleadings should be entered on each of Plaintiffs' direct claims of negligence (other than Renee's claim).

### V.  Breach of Implied Warranty of Habitability (Count II)

The Plaintiffs allegations concern a tree that fell on the premises. The Plaintiffs, as seasonal campers in an outdoor campsite, do not enjoy the protections of Maine's implied warranty of habitability statute. The statute protects residential dwelling units, not outdoor campsites, particularly those wooded areas beyond the leased campsites. See 14 M.R.S.A. § 6021(1)(stating that "dwelling unit" shall include mobile homes, apartments, buildings or other structures, including the common areas thereof, which are rented for human habitation).

Regardless, the implied warranty of habitability statute protects against concerns for inadequate heat, sanitation, and similar issues. A dead tree located outside the permiter of an outdoor campsite in a heavily wooded area simply is not a habitability concern. Rather, it is an allegedly dangerous condition that should be addressed upon notice. If the campground fails to adhere to the proper standard of care, it may, depending on the circumstances, be held liable under a theory of negligence. Therefore, as Plaintiffs claims are nothing more than a claim for negligence, judgment should be entered on Count II.

### VI.  Interference with Quiet Enjoyment of Premises (Count III)

Similarly, the allegations contained in Plaintiffs' Complaint, even if taken as true, do not give rise to a claim of interference with quiet enjoyment of premises. Such a claim contemplates ongoing noises, lights, or other nuisances affecting a residential dwelling or

commercial landlord-tenant relationship. Although the tree certainly fell onto the property, this was an isolated, one-time event, and the Messanas had not complained about the quiet enjoyment of the premises at any time. DSMF ¶¶ 24-25.

If isolated events are considered interference with quiet enjoyment, then tenants or campers could bring action against a campground for virtually any isolated inconvenient disruption, noise or other nuisance. As such, judgment on the pleadings should be entered on Count III.

### VII.    Negligent Infliction of Emotional Distress (Counts IV - VIII)

In Maine, to recover under a theory of NIED, a plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. See Curis v. Porter, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. Maine courts have recognized a duty to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed; and third, when the wrongdoer has committed another underlying tort. Id. ¶ 19. However, under the third category, when the independent tort allows recovery for emotional suffering, the claim for NIED is subsumed in any award entered on the separate tort and the NIED claim is not necessary. Id., ¶¶ 19-20, 784 A.2d at 26.

In order for a bystander or an "indirect victim" to recover for NIED, the bystander must demonstrate that he or she was present at the scene of the accident, that he or she suffered serious mental distress as a result of contemporaneously perceiving the accident;

7

1066286.1

and that he or she was closely related to the victim. See Champagne v. Mid-Maine Medical Center, 711 A.2d 842, 846.

Thus, in the three narrowly defined categories, Maine courts allow "direct" and "indirect" victims to recover for NIED. Id. at 844-847. A plaintiff is a direct victim if she was the object of the defendant's negligence. Id. at 844. In contrast, a plaintiff is an indirect victim if the claimed negligence underlying the NIED claim was directed not at her, but instead at someone she loved and to whom she was close. Id., 711 A.2d at 844-45.

### A.    Renee Messana

In this case, Ms. Messana was the direct victim as she was the object of the negligence. As there was no special relationship between her and the insured, and because she was not a bystander, she may only recover NIED under the theory that an underlying tort has been committed. Because emotional distress is recoverable under claim of negligence, however, her NIED claim will be subsumed into her negligence claim, and therefore, judgment entered on Count IV. Id. at 847-48.

### B.    Other Plaintiffs

Although Paul Messana, Paul DeMeo, Ariana and Raymond were in the general area when the accident occurred, there is no evidence that they contemporaneously witnessed the tree falling. DSMF ¶¶ 27, 37, 39-40. Further, as demonstrated in Defendant's Statement of Material Facts, none of the family members can demonstrate that they suffered "severe" emotional distress relating to contemporaneously witnessing the accident itself. DSMF ¶¶ 31-36, 39-47. Ariana and Raymond were not deposed. None of these Plaintiffs have designated experts to opine on the severity of their distress and the causal link between the stress and the few minutes after the tree fell. Bystander liability in

Maine is limited to very narrow circumstances that are not present here. See Champagne, 711 A.2d 842, 846-47 (holding that mother who did not witness baby being nursed by the wrong mother could not recover under theory of NIED).

### VIII. Impairment of Earning Capacity (Counts IX – X)

Counsel's research has revealed no Maine case in which impairment of earning capacity is recognized as a stand-alone cause of action. Rather, impairment of earning capacity is a component of damages. Further, upon review of Plaintiffs' Complaint, it appears their loss of earning capacity claims are actually drafted as purported "claims" for lost wages. Similarly, the Law Court has not recognized lost wages as a stand-alone cause of action. Rather, lost wages is also a component of damages recoverable in a negligence action. Therefore, judgment on the pleadings should also be entered on Counts IX-X.

### IX. Loss of Consortium (Counts XI – XIV)

Under Maine law, Mr. Messana may properly assert a claim for loss of consortium. See 14 M.R.S.A. § 302; Hardy v. St. Claire, 1999 ME 142, ¶ 12, 739 A.2d 368, 372(recognizing loss of consortium claim as an independent claim based on statutory law separate from the underlying tort claim brought by the victim spouse). Loss of consortium addresses interference "with the continuation of the relation of husband and wife." Pelletier v. Fort Kent Golf Club, 662 A.2d 220, 225 (Me. 1995). A spouse may not recover, however, unless there was actual loss of services and affection. See id. Defendants will certainly concede for the that for the purposes of summary judgment, there is a genuine issue of material fact as to whether Paul Messana suffered loss of consortium as a result of the accident.

In Maine, however, the Law Court has refused to recognize a cause of action for loss of parental consortium. See Durepo v. Fishman, 533 A.2d 264 (Me. 1987). Thus, the children do not have a claim for loss of consortium. It follows that judgment must be entered on Counts XII-XIV.

X.     **Release of Liability**

Maine courts have upheld releases of liability as such releases are not against public policy. See, e.g., Lloyd v. Sugarloaf, 2003 WL 22208415 (Me.)(upholding entry release of liability for mountain bike race); Hardy v. St. Claire, 1999 ME 142, 739 A.2d 368(upholding release of liability in favor of racetrack in action brought by injured pit crew member who was injured when bleacher collapsed beneath him).

In this case, the Messanas expressly released Acres of Wildlife from liability arising out injury and damage, "however caused," to any person or property on the leased premises. See Defendant's SMF ¶¶4-15, Exh. A. This language, as all encompassing, by definition would include the injuries sustained by the Renee and the Messanas.

Massachusetts courts have also upheld contracts releasing one party from liability for personal injuries. See Webb v. Peak, 2002 WL 122894 (Mass. App. Div.)(upholding release form signed by skier in conjunction with her rental of ski equipment, despite skier's claim that there was a significant disadvantage in bargaining power between herself and ski shop, in that she could not secure rental skis without signing release form); Vallone v. Donna, 729 N.E.2d 648 (Mass App. Ct. 2000)(upholding release against ice skater at staking rink and rejecting notion that waivers of liability are against public policy); Lee Allied Sports Assoc., Inc., 209 N.E.2d 329 (Mass. 1965)(upholding release against plaintiff who was injured when struck by wheel from racing car in pit area of speedway,

noting that one who signs a release is deemed to have read it); Gonsalves v. Commonwealth, 541 N.E.2d 366 (App. Ct. Mass. 1989)(stating that generally, release of liability for ordinary negligence are valid); but see Henry v. Mansfield Beauty Academy, Inc., 541 N.E.2d 366. Therefore, to the extent this Court applies Massachusetts law, it should likewise enter judgment in favor of the Defendant.

XI.   **Conclusion**

In sum, because of the nature of Plaintiffs' allegations, and the evidence in the record, Plaintiffs' claims should consist of nothing more than a claim of negligence brought by Renee (Count I) and a loss of consortium claim brought by Paul Messana (Count XI). Nevertheless, because Renee and Paul agreed to release Acres of Wildlife from liability, however, both of these claims must nevertheless be dismissed. Accordingly, Defendant respectfully requests that this Court enter final judgment in its favor on all claims contained in Plaintiffs' Complaint.

DATED at Portland, Maine this 15th day of December, 2005.

/s/ David J. Ekelund, Jr.
Daniel Rapaport, Esq.
Timothy J. Perry, Esq.
David J. Ekelund, Jr., Esq.
Attorneys for Defendants

PRETI, FLAHERTY, BELIVEAU, PACHIOS
    & HALEY, LLC
One City Center, P.O. Box 9546
Portland, ME  04112-9546
TEL:  (207) 791-3000