UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, PAUL DEMEO, PAUL MESSANA, INDIVIDUALLY AND AS NEXT FRIEND OF RAYMOND MESSANA AND ARIANA MESSANA )<br><br>Plaintiffs, )<br><br>v. )<br><br>ACRES OF WILDLIFE CAMPGROUND, INC. )<br><br>Defendant | Docket No. 04-11913 MLW |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Acres of Wildlife Campground is located in Steep Falls, Maine. See Affidavit of Elaine Burnham ("Burnham Aff.") ¶ 2.

2. Elaine Baptista Burnham, one of the two owners of Defendant, lives in Hollis, Maine. See Burnham Aff. ¶¶ 1, 3.

3. Elaine is responsible for the accounting, generally running the office and assisting with the day-to-day operations of the Campground. See Burnham Aff. ¶ 1.

4. In her capacity as owner and in the performance of my duties with the Campground, she is familiar with and has direct knowledge of the lease agreement that campers are required to sign prior to leasing a campsite, the process by which such agreements are signed and the intent behind the standard lease agreement, including the lease agreement entered into with the Messanas for the 2002 year, which is attached to her affidavit as Exhibit A. See Burnham Aff. ¶ 4, Exh. A. The entire Agreement is incorporated herein.

1

1079116.1

5. The Lease Agreement states in part: "LANDLORD shall not be liable to TENANT for injury or damage, however, caused, to any person or property on the lease premises." Burnham Aff. ¶ 7, Exh. A.

6. The lease agreement attached as Exhibit A was intended to be, and from the Defendant's perspective, was, a binding contract between the campground and the Messanas, for the lease of Campsite 20, which was located on the campground. See Burnham Aff. ¶ 8.

7. The intent of Paragraph 5 was exactly as it reads: that Acres of Wildlife will not be liable for personal injuries, including the injuries that occurred in this case. See Burnham Aff. ¶ 7.

8. At no time, did the Messanas request clarification of the terms of the lease agreement. See Burnham Aff. ¶ 9.

9. Because of the nature of camping being outdoors, and there being risks associated with camping, particularly in heavily wooded campgrounds, Paragraph 5 ensures that the campers know that they are camping at their own risk and that Acres of Wildlife will not be responsible for any injuries. See Burnham Aff. ¶ 10.

10. Otherwise, the costs of running a campground are significantly increased and campers may not enjoy the same reasonable rate. See Burnham Aff. ¶ 11.

11. Paul Messana signed this Agreement. See Burnham Aff. ¶ 4, 12, Exh. A.

12. It is more likely than not that Paul Messana signed the Lease Agreement in Maine. See Burnham Aff. ¶ 12.

13. Although she did not sign the agreement, Renee is listed as a tenant, and therefore, she agreed to the terms and conditions of this Agreement. See Burnham Aff. ¶ 13.

14. Paul Messana, as her agent, agreed to these terms on her behalf. See Burnham Aff. ¶ 13.

15. At no time did Ms. Messana indicate that she would not abide by the terms and conditions of the Agreement. See Burnham Aff. ¶ 14.

16. No negotiation of the Lease Agreement took place and to the extent any negotiation did take place, it is more likely than not that such negotiations occurred in Maine while the Messanas were camping at the campground in 2001. See Burnham Aff. ¶ 16.

17. This action is the first time the campground has been sued and the only time anyone had been seriously injured. See Burnham Aff. ¶ 17.

18. The campsite at issue, campsite 20, is an outdoor campsite. See Burnham Aff. ¶ 18.

19. The Messanas were allowed to bring their own tents and RV campers on the site. See Burnham Aff. ¶ 18.

20. There are no dwelling units on the site. See Burnham Aff. ¶ 18.

21. The campsite was habitable at all times. See Burnham Aff. ¶ 19.

22. Defendant did not promise the Messanas that they would enjoy the protections of Maine's implied warranty of habitability statute. See Burnham Aff. ¶ 20.

23. There were no problems with the campsite concerning habitability issues. See Burnham Aff. ¶ 21.

1079116.1

24. There was no agreement that Defendant must provide for the quiet enjoyment of premises, particularly as this was an outdoor campsite. See Burnham Aff. ¶ 22.

25. The Messanas did not complain about the quiet enjoyment of the premises at any time. See Burnham Aff. ¶ 23.

26. Paul DeMeo slept in his own tent near the road the night and morning of the accident. DeMeo Dep. Tr. at 7, lns. 4-22.

27. Paul DeMeo did not actually see the tree fall. DeMeo Dep. Tr. at 9, lns. 7-8.

28. After the tree fell, Paul DeMeo went over to see what had occurred. DeMeo Dep. Tr. at 10, lns. 12-14.

29. He helped his father remove the tree on top of the tent. DeMeo Dep. Tr. at 10, lns. 21-24; 11, ln. 1.

30. Before and after the tree removed, Paul DeMeo did not hear his mother, brother or sister say anything. DeMeo Dep. Tr. at 11, lns. 2-5.

31. He ripped the tent open to see if his brother and sister were okay. His brother and sister "looked fine," and he told them to wait in the trailor. DeMeo Dep. Tr. at 11, lns. 5-10; 17, lns. 1-3.

32. Ariana and Raymond said "they were fine." DeMeo Dep. Tr. at 11, lns. 12-16; Page 11, lns. 22-24; 12, ln. 1.

33. When he saw his mother, Paul DeMeo "had no feeling." DeMeo Dep. Tr. at 12, lns. 4-8.

34. Ariana Messana had a "little trouble" with the accident. "Every now and then she thinks about [the accident]." DeMeo Dep. Tr. at 16, lns. 18-22.

35. Ariana Messana had some stomach pains following the accident and Renee wondered whether it was anxiety or not. Lauretti Dep. Tr. at 14, lns. 18-24.

36. Although Renee believes Ariana has "been affected by the accident," Ariana has not seen a therapist. Renee Messana Dep. Tr. at 93, lns. 17-24; 94, lns. 1-5.

37. Paul Messana was in the trailer on the campsite at the time the tree fell. Paul Messana Dep. Tr. at 31, lns. 3-4.

38. After the tree fell, he ran over and picked up the main part of the tree off of the tent. Dep. Tr. at 36, lns. 6-15.

39. Immediately after the tree fell, Raymond was "half asleep and very confused." At the time, he did not know what happened. Paul Messana Dep. Tr. at 37, lns. 11-24; 38, lns. 1-7.

40. Mr. Messana is not sure whether Raymond saw Ms. Messana after the tree fell. Paul Messana Dep. Tr. at 38, lns. 8-16.

41. Mr. Messana does not know whether Raymond or Ariana were crying immediately after the accident. Paul Messana Dep. Tr. at 39, lns. 21-24.

42. Ariana and Raymond do not currently have any difficulty sleeping. Ariana has an occasional nightmare, but he does not know whether her nightmares are related to this incident. Paul Messana Dep. Tr. 75 at 11-16.

DATED at Portland, Maine this 15th day of December, 2005.

                              /s/ David J. Ekelund, Jr.
                              Daniel Rapaport, Esq.
                              Timothy J. Perry, Esq.
                              David J. Ekelund, Jr., Esq.
                              Attorneys for Defendant

PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC
One City Center
P.O. Box 9546
Portland, ME  04112-9546
TEL:  (207) 791-3000