UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, PAUL DEMEO, PAUL MESSANA, INDIVIDUALLY AND AS NEXT FRIEND OF RAYMOND MESSANA AND ARIANA MESSANA )<br><br>Plaintiffs, )<br><br>v. )<br><br>ACRES OF WILDLIFE CAMPGROUND, INC. )<br><br>Defendant | Docket No. 04-11913 MLW |

**AFFIDAVIT OF ELAINE BURNHAM**

I, Elaine Burnham, do hereby depose and say under oath:

1. I am an owner of Acres of Wildlife Campground, Inc., along with my brother, Michael Baptista. I am responsible for the accounting, generally running the office, and assisting with many of the day-to-day operations for Acres of Wildlife Campground.

2. The Campground is located in Steep Falls, Maine.

3. I live in Hollis, Maine.

4. In my capacity as owner and in the performance of my duties with the Campground, I am familiar with and have direct knowledge of the lease agreement that campers are required to sign prior to leasing a campsite, the process by which such agreements are signed and the intent behind the standard lease agreement, including the lease agreement entered into with the Messanas for the 2002 year, which is attached hereto as Exhibit A.

1

1079117.1

5. The testimony that follows is based on my own personal knowledge and understanding, and if I have no knowledge of such facts, the statement shall be made to the best of my personal knowledge that I am not aware of such facts.

6. The lease agreement attached as Exhibit A was intended to be, and from the Defendant's perspective, was, a binding contract between the campground and the Messanas, for the lease of Campsite 20, which was located on the campground.

7. Under Paragraph 5 of the lease agreement, it clearly states that the campground "shall not be liable to TENANT for injury or damage, however, caused, to any person or property on the lease premises."

8. The intent of this Paragraph was exactly as it reads: that Acres of Wildlife will not be liable for personal injuries, including the injuries that occurred in this case.

9. At no time, to the best of my knowledge, did the Messanas request clarification of the terms of the lease agreement.

10. Because of the nature of camping being outdoors, and there being risks associated with camping, particularly in heavily wooded campgrounds, this Paragraph ensures that the campers know that they are camping at their own risk and that Acres of Wildlife will not be responsible for any injuries.

11. Otherwise, the costs of running a campground are significantly increased and campers may not enjoy the same reasonable rate.

12. Paul Messana signed this Agreement on or about September 9, 2001, which indicates it is more likely than not that not he signed the Agreement in Maine, while at the campground before leaving at the end of the 2001 year.

13. Although she did not sign the agreement, Renee is listed as a tenant, and therefore, she adopted the terms and conditions of this Agreement. Paul Messana, as her agent, agreed to these terms on her behalf.

14. At no time did Ms. Messana indicate that she would not abide by the terms and conditions of the Agreement.

15. Further, Paragraph 5 states that the campground shall not be liable for injury or damages "to any person or property on the leased premises," which includes all Plaintiffs.

16. To the best of my knowledge, no negotiation of the lease agreement attached hereto took place and to the extent any negotiation did take place, it most likely occurred in Maine while the Messanas were camping at the campground in 2001.

17. This is the first time the campground has been sued and the only time anyone had been seriously injured.

18. The campsite at issue, campsite 20, is an outdoor campsite. The Messanas were allowed to bring their own tents and RV campers on the site. There are no dwelling units on the site.

19. To the best of my knowledge, the campsite was habitable at all times.

20. To the best of my knowledge, Defendants did not promise the Messanas that they would enjoy the protections of Maine's implied warranty of habitability statute.

21. To the best of my knowledge, there were no problems with the campsite alleged by the Messanas concerning habitability issues, which I understand to involve sanitation, heat, and similar issues.

22. To the best of my knowledge, there was no agreement to provide for the quiet enjoyment of premises, particularly as this was an outdoor campsite.

23. The Messanas did not complain about the quiet enjoyment of the premises.

DATED: 12/15/05

*Elaine Burnham*
By its HA

STATE OF MAINE
CUMBERLAND, ss.

Personally appeared the above-named Elaine Burnham and gave oath that the foregoing statements made by her are true and are based on her personal knowledge.

Before me,

~~Notary Public~~/Attorney-at-Law

4

1079117.1

# ACRES OF WILDLIFE CAMPGROUND  Annual Campground SEASONAL SITE LEASE

This LEASE AGREEMENT, made this ____ day of ____, Yr___ between the **ACRES OF WILDLIFE CAMPGROUND, INC.**, **Route 11/113, ● P.O. Box 2, ● Steep Falls, Cumberland County, Maine, 04085**, the LANDLORD, and (TENANT) Paul and Renee Messana   Address 36 Hillside Ave  Town/City Everett  State Ma  Zip 02149 Tel# **617-381-1071** ● (Campsite Tel#_____) The TENANT.

1. The LANDLORD agrees to lease to the TENANT, the Camp Site 20 in the **Acres of Wildlife Campground, Inc**

2. The Lease Term shall be for the Camping Season of 2002, May 1 to Columbus Day. Should you decide to leave before the season is over, or should an undesirable situation arise and an eviction is warranted, the seasonal rate will <u>be recomputed to weekly and daily rates. If any credit is due, the refund will be based on that figure.</u>

3. The TENANT agrees to pay the LANDLORD, rent for the SITE leased, in the amount of $1850 +tax in advance and/or in monthly installments on the 1st day of each month beginning no later than January 2002. If the full amount is paid prior to February 1, you will receive a **5% discount**. If not paid by February 1, balance will be due the 1st of May *(Please, No Exceptions)*. <u>After May 1 for any outstanding balance **over $100**, a late fee of *$10 per week* will be added to your bill until balance is paid.</u> Seasonal fee is based on our program of leaving trailer on site from Columbus Day to May 1st, and the coming camping season from May 1st to Columbus Day. Seasonal fee includes water, and sewer (includes 5 dumps per season. Additional dumping is $20 per dump) for a family of 2 adults, 3 children under 18 years old and family pet on a leash. Please always use RV toilet tissue, another might cause sewage damage. Electric will be billed to the TENANT. Billing for Electric is as follows (May 1st-July 31st..1st*billing Period*, Aug. 1st -Columbus Day..*Final Billing*). Payment choices for Electric is as follows: A $200 dollar security deposit for the electric will be required by May 1st or a credit card to apply the electric bill to.

4. The TENANT agrees to use the premises for camping Only and does certify that the SITE cannot be sublet. The TENANT further agrees that the SITE is for the sole use of the immediate family, whose names and ages are listed on this LEASE AGREEMENT. No other persons are entitled to the use of the SITE unless the TENANT is present or with prior approval and under the provisions of the current CAMPGROUND VISITOR RULES. List below the names and ages of all unmarried dependent children under 18 years of age living at home and/or grandchildren; If there is an additional adult using the site, they have the option of paying a seasonal visitor's fee of $100.00.
SPOUSE Renee Messana   CHILD Paul DeMeo AGE 16
CHILD Ariana Messana AGE 6   CHILD Raymond Messana AGE 3

5. The LANDLORD shall not be liable to TENANT for injury or damage, however caused, to any person or property on the leased premises. Your RV should be insured at all times. The Landlord is not responsible for damages done by weather or intruders. The TENANT agrees to read and comply with all CAMPGROUND RULES and REGULATIONS which are detailed in our Campground brochure.

6. The TENANT is responsible for all persons visiting their SITE. <u>CAMPGROUND VISITOR RULES apply to all persons not specifically listed on this LEASE AGREEMENT.</u> The TENANT should inform all potential visitors in advance concerning RULES, FEES, and REGISTRATION policies.

7. Description of the UNIT to be placed on the leased site is as follows:
   (new seasonals are to have an RV 10yrs or younger)
   Year_____ Make_____ Model_____ Color_____
   Serial No._____ Size_____ Plate No._____ State____

8. Sheds, refrigerators, and storage boxes, permanent alteration or attachments to the land are not permitted. The TENANT is responsible to rake his own site. *Raking should be done no later than the first weekend in May.* Please always keep your site neat. Please no LP tanks larger then 50lbs on your site. A half cord of *neatly stacked* wood is allowed stored at your site.

9. This lease contains the entire agreement between the LANDLORD and the TENANT, no other representation or inducement, verbal or written, has been made which is not contained in the lease. <u>This LEASE AGREEMENT is severable; if one portion is invalid, the remaining portion shall, nevertheless, remain in full force and effect.</u> Witness the hand and seals of the parties hereto, the day and year written above. All rules and regulations apply as long as TENANT is active Seasonal.

TENANT _____ Date Signed 9/2/01
LANDLORD _____

EXHIBIT A