UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, et al.,<br>Plaintiffs<br><br>v.<br>ACRES OF WILDLIFE CAMPGROUND, INC.,<br>Defendant | Docket No. 04-11913-MLW |

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT**

The Plaintiffs, Renee Messana, et al., hereby move in opposition to Defendant's motion for judgment on the pleadings and/or summary judgment. In support of its motion, Plaintiffs state as follows.

**I. Introduction**

This complaint, brought by Renee Messana, her husband Paul Messana, her sons Paul DeMeo and Raymond Messana, and her daughter, Ariana Messana (hereinafter "Plaintiffs") against Acres of Wildlife Campground (hereinafter "Defendant"), includes counts for Negligence, Breach of Habitability, Breach of Quiet Enjoyment, Negligent Infliction of Emotional Distress, Impairment of Earning Capacity, and Loss of Consortium. Summary Judgment under Rule 56 (c) of the Federal Rules of Civil Procedure is not proper on any of these counts since examining the evidence in the light most favorable to the Plaintiffs shows that there are genuine issues of material fact, and reasonable persons could not reach just one conclusion.

## II. Count One: Negligence

The concept of Negligence includes a land owner's failure to use ordinary care under the circumstances in maintaining the premises. Defendant breached its duty of care when it allowed an unsafe dead tree to remain on the premises, which an ordinary, careful person owning and operating a campground would not have allowed in the same situation. The breach of this duty caused damages for each Plaintiff, all of whom suffered as a consequence of the Defendant's negligence. Renee, Raymond, and Ariana were in the tent that was hit by the fallen tree, and were therefore trapped in the broken tent until help arrived and were subsequently freed when a knife was used to cut open the tent. Renee suffered severe physical injuries of the head and face and Ariana suffered some minor scratches and bruises. Paul Messana as well as sustaining emotional injuries, lost personal property, to wit: his tent that was destroyed due to Defendant's negligence, and therefore was directly harmed by the negligence of Defendant. Paul DeMeo has been suffering emotionally since the accident.

## III. Count Two: Breach of Implied Warranty of Habitability

Leases have been held to include an implied warranty of habitability. When the expected use of the premises is known to the landlord, this warranty provides that the space is safe, livable, and fit for its intended use. The space referred to covers the dwelling unit and surrounding premises, which may include outdoor areas. The lease in this case was for Camp Site #20 of the Acres of Wildlife Campground, and this lease should enjoy the same protection as any other lease that creates a landlord and tenant

## VI. Counts Nine and Ten: Impairment of Earning Capacity

Renee Messana is still physically and emotionally disturbed because of the accident which took place at the Acres of Wildlife Campground. It is unclear how much more time will pass before she is able to resume her daily duties such as cooking, cleaning, shopping, and transporting her children, as she had done before the accident. Until that time, Paul Messana must compensate for his wife's disabilities, and is unable to put in as many hours at his job as he did before the accident. Therefore both Paul and Renee Messana's earning capacities have been impaired due to Defendant's negligence.

## VII. Counts Eleven through Fourteen: Loss of Consortium

In viewing the claim for loss of consortium it is judicially sound and proper to apply the law of the Commonwealth of Massachusetts to these claims. On the very day of the accident Paul DeMeo, Raymond and Ariana Messana were picked up at the campground and returned to Everett, Massachusetts, to the home of their grandparents where they remained for an extended period of time until they were reunited with their mother in their Everett home. Deposition of Paul DeMeo p. 19, li. 1-15.

When Renee returned to Massachusetts, her sister left her employment out of state and came to care for Renee who stayed in her room for approximately four months. It was therefore in Massachusetts, not Maine that the children were deprived of their mothers' society, affection, care and comfort due to the pain and suffering that she was forced to endure as a result of her massive head and facial injuries.

**VIII. Release Language**

Massachusetts and Maine cases have invalidated exculpatory clauses like the one in the lease before this Court, as against Public Policy in certain situations. These situations exist when 1. the activity is a public service or open to the public; 2. the facility invites persons of every skill level to participate; 3. the facility has the expertise and opportunity to control hazards and guard against negligence; and 4. the facility is in a better position to ensure against risks; and 5. broad releases of liability would remove incentives for the facility to manage risks thereby requiring the public generally to bear the costs. *See Spencer v. Killington, Ltd,* 702 A2nd 35, 36-38 (VT. 1997), where the Court held the entry release form for ski racing was void as against public policy.

**IX. Conclusion**

Wherefore, the Plaintiffs respectfully request that Defendant's Request for Judgment on the Pleadings and/or Summary Judgment be denied for the aforementioned reasons.

Respectfully submitted,

John W. Collier
Attorney for Plaintiffs
BBO# 092010
200 Monsignor O'Brien Highway
Cambridge, MA 02141
(617) 441-2121 X2

Paul Massone

fall at Acres of Wildlife?

A. I had never seen a tree fall. I had seen many fallen trees.

Q. Had you ever heard that noise before?

A. No.

Q. Were you folks able to build campfires?

A. Yes.

Q. Would you get firewood from the area?

A. Yes.

Q. Where would you get the firewood from?

A. Usually very local. Just outside of the site range. And he also had a road that came up around the back of my trailer. And his maintenance crew every now and then would stack some stuff there, and we'd just take a little bit here and there.

Q. What did you see when you came out of the trailer?

A. I seen the tree on its final journey down and hitting the tent.

Q. You actually saw it hit the tent?

A. I actually saw it hit the tent, yes.

Q. Did it make any particular noise that you can describe for us?

A. When it hit the tent?

Q. Yes.

A. No. Just besides all the cracking as it was coming down, branches and everything else were breaking.

Q. And your belief was that your wife and your children were in the tent?

A. Yes.

Q. What did you do?

A. I ran over and picked up the main part of the tree off of the tent. And immediately after, Paul DeMeo came out of his tent, and he pulled the smaller piece off and tried to open the tent up. And the whole time I was just holding it to keep it from going back on the tent.

Q. Did you ever come to find out what type of tree it was?

A. I don't know.

Q. Can you describe what the tree, the tree that was on the tent, what that looked like?

A. It was completely stripped of bark, and probably the part -- the part that actually hit the tent was probably six inches around, six inches diameter.

Paul DeMaco

A. He asked me if I wanted to go back with him to go to the hospital or if I wanted to go with my aunt back to my grandparents' house.

Q. What did you say?

A. I went with my aunt to go back to my grandparents' house.

Q. Where did your grandparents live?

A. In Everett.

Q. So you left Maine and went back to Everett?

A. Yes.

Q. And that's the last day you were at the campground?

A. Yes.

Q. Have you been in Maine since?

A. No.

Q. Have you been camping since?

A. No.

Q. When is the next time you saw your mother?

A. I went up with her about two days later with my dad to go see her at the hospital.

Q. And how did she appear to you?

A. Her face was all black and blue. You couldn't really see her face.

Q. Were you able to talk with her?

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RENEE MESSANA, et al.,
Plaintiffs

v.
ACRES OF WILDLIFE CAMPGROUND, INC.,
Defendant

Docket No. 04-11913-MLW

## PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

1. The intent of Paragraph 5 of the Lease Agreement was that Acres of Wildlife would not be liable for personal injuries sustained as a result of risks inherent to camping and that are ordinarily associated with camping activities, not injuries sustained as a result of the Campground's negligence, and those not assumed at the time of signing the agreement.
2. A tree falling on a tent in a campground is not the type of risk assumed when camping on a leased campsite in non-dangerous weather conditions.
3. The costs associated with safely running a campground may be spread across the entire client base and therefore campers would continue to enjoy a reasonable rate.
4. Paul Messana, by signing the Lease, was not acting as a representative for Renee.
5. During the term of the Messana's tenancy, their dwelling units consisted of two tents on the leased camp site #20.
6. The campsite was no longer habitable after the tree fell on July 1, 2002.
7. The warranty of habitability is implied and therefore needs no guarantee by lessors.
8. There were obvious problems with the campsite regarding habitability issues once the tree fell and remained for a number of days.
9. The warranty of quiet enjoyment is implied and therefore needs no guarantee or agreement by lessors.

Dated this 17th day of January, 2006.

John W. Collier, Esq.
Attorney for Plaintiffs
200 Monsignor O'Brien Hwy.
Cambridge, MA 02141
(617) 441-2121 Ext. 2

**JOHN W. COLLIER**
Attorney-at-Law
200 Monsignor O'Brien Highway
Cambridge, Massachusetts 02141
617-441-2121 Ext. 2
attyjwcollier@yahoo.com

# FAX

January 18, 2006

**To:** Maria Simeone **Facsimile #** (617) 748-4580

**From**: Carolyn **Facsimile #** (617) 441-9955

**Re**: Messana v. Acres of Wildlife Campground, Inc.

# of Pages (inclusive of Cover Sheet):12

**Dear Maria,**

**In my absence, Attorney Collier faxed over an earlier version of the Opposition to Defendant's Motion for Judgment on the Pleadings and/or Summary Judgment. There are no substantive changes, however the copy sent for Judge Sorokin's consideration had omitted citations and a conclusion. I have attached the updated copy. Sorry for any inconvenience this may cause. We are also still waiting for our password and login information so we may file this electronically.**

**Thank you very much,**

**Carolyn Benoit**