UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RENEE MESSANA, PAUL DEMEO, PAUL MESSANA, INDIVIDUALLY AND AS NEXT FRIEND OF RAYMOND MESSANA AND ARIANA MESSANA, | ) | Civil Action No. 04-11913-LTS |
| Plaintiffs, | ) | |
| v. | ) | |
| ACRES OF WILDLIFE CAMPGROUND, INC., | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/ OR SUMMARY JUDGMENT

April 24, 2006

SOROKIN, M.J.

This lawsuit arises out of an incident at a campground which resulted in physical injury to the plaintiff Renee Messana. Messana, along with her husband, Paul Messana, and her three children, Paul DeMeo, Raymond Messana, and Ariana Messana, filed a 14-count complaint against the defendant, Acres of Wildlife Campground, Inc. The Complaint asserts claims for negligence (Count I); Breach of the Implied Warranty of Habitability (Count II); Interference with Quiet Enjoyment of the Premises (Count III); Negligent Infliction of Emotional Distress (Counts IV through VIII brought by Renee, Paul Demeo, Raymond Messana, Paul Messana, and Ariana Messana, respectively); Impairment of Earning Capacity (Counts IX and X, brought by Renee and Paul Messana, respectively); and Loss of Consortium (Counts XI through XIV, brought by Paul Messana, Paul Demeo, Raymond Messana, and Ariana Messana, respectively).

The Defendant has moved for judgment on the pleadings, or in the alternative, for summary judgment.

I. BACKGROUND

The following facts are either undisputed or presented in the light most favorable to the plaintiffs as the non-moving parties. Acres of Wildlife Campground (the campground) is located in Steep Falls, Maine. On September 2, 2001, Paul Messana signed a Lease Agreement as the "Tenant" in order to secure a campsite for the next season, which ran from May 1, 2002 through October 14, 2002. Paragraph 5 of the Lease Agreement provided in pertinent part that "The LANDLORD shall not be liable to TENANT for injury or damage, however caused, to any person or property on the leased premises. Your RV should be insured at all times. The Landlord is not responsible for damages done by weather or intruders."

On the morning of July 1, 2002, the plaintiffs, all residents of Massachusetts, were present at the campsite. Renee was asleep with Raymond and Ariana in one tent located on a platform. Paul Messana was making coffee in the family's trailer on the site, and Paul Demeo was alone in a different tent on the site. At approximately 8:00 a.m., a dead and barkless tree fell onto the tent occupied by Renee, Raymond, and Ariana. Paul Messana and Paul Demeo both heard cracking noises and the sound of branches breaking as the tree was falling (Deposition of Paul Messana, Docket # 20-4, page 3; Deposition of Paul DeMeo, Docket # 20-4, page 7). Paul Messana saw the tree as it fell, and then saw it hit the tent in which his wife and two children were sleeping (Deposition of Paul Messana, Docket # 20-4, page 3). He ran over to the tent and picked the main part of the tree off of the tent. Immediately thereafter, Paul DeMeo, who had been awoken by the sound of the tree as it came down (Deposition of Paul DeMeo, Docket #20-

4, page 8), came out of his tent and pulled a smaller piece of the tree off of the tent. DeMeo also tried to open the tent, while Paul Messana kept holding the tree up to prevent it from falling back on the tent. (Plaintiff's Exhibit, Deposition of Paul Messana, Docket # 20-4, page 3). DeMeo ripped the tent open and Paul Messana called to Renee, but she did not respond. The tree had fallen on Renee, and she lay still with a bloody face as Paul Messana attempted to lift the tree off of her. Demeo extricated Raymond and Ariana, both of whom appeared to be fine, from the tent and asked them to go play in the trailer.

Renee was rushed to the hospital, where she was diagnosed with multiple severe facial, skull and sinus fractures, with extensive swelling around the eyes. She remained hospitalized for six days and then returned home to Massachusetts.

## II. CHOICE OF LAW

A federal court sitting in diversity applies the choice-of-law framework of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941). It is permissible to have the law of different states apply to discrete counts in one complaint. See Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 337 (1983).

### A. Tort Claims

Plaintiffs' claims for Negligence, Negligent Infliction of Emotional Distress, and Loss of Consortium sound in tort. Under Massachusetts' choice of law rules, tort claims are governed by the law of the state in which the injury occurred, unless another state has a more significant relationship to the cause of action. Bergin v. Dartmouth Pharmaceutical, Inc., 326 F.Supp.2d 179, 183 (D.Mass.2004), citing Dunfey v. Roger Williams University, 824 F.Supp.18, 21 (D.Mass.1993). The place where the injury occurred is "the place where the last event necessary

to make an actor liable for an alleged tort takes place." Cohen, 389 Mass. at –, quoting Orr v. Sasseman, 239 F.2d 182, 186 (5th Cir.1956). As the tree fell and injured Renee in Maine, the law of Maine will apply absent a showing that Massachusetts has a more significant relationship to the cause of action. With regard to the claims for negligence and negligent infliction of emotional distress, plaintiffs do not dispute that Maine law should apply, nor do they provide any reason why Massachusetts has a more compelling relationship to the claims. In fact, the only case cited by plaintiffs in support of their Opposition is a Maine case. Accordingly, the parties appear to agree that Maine law applies. The Court may accept the parties' agreement regarding choice of law without independent analysis of the applicable rules. See Magarian v. Hawkins, 321 F.3d 235, 238 (1st Cir.2003)(citation omitted). Therefore, Maine law will apply to Count I and to Counts IV through VIII.

The analysis with regard to the claims for loss of consortium is somewhat different. While defendants advocate for the application of Maine law, plaintiffs contend that the law of Massachusetts should apply to these claims. Renee returned to Massachusetts after being hospitalized in Maine for six days, and then retreated to her room in Massachusetts for four months (Plaintiffs' Opposition, at 4). Therefore, plaintiffs argue, it was in Massachusetts that the plaintiffs suffered the injury of being deprived of Renee's society, affection, care and comfort.

Massachusetts and Maine both permit a spouse to bring a claim for loss of consortium when a spouse has been injured due to the negligence of another. See Agis v. Howard Johnson Co., 371 Mass. 140 (1976); Pelletier v. Fort Kent Golf Club, 662 A.2d 220, 225 (Me. 1995). However, although Massachusetts also recognizes the right of a dependent child to bring a claim of loss of consortium after a parent is injured, see Ferriter v. Daniel O'Connell's Sons, Inc., 381

Mass. 507 (1980), Maine does not. See Durepo v. Fishman, 533 A.2d 264 (Me.1987).

The pertinent question is what framework Massachusetts as the forum state has adopted for a choice of law analysis regarding this issue. The Massachusetts Supreme Judicial Court (SJC) has not directly confronted a choice of law issue in the context of a loss of consortium claim. See Cohen, 389 Mass. at 335, n. 8. Defendant in that case urged the SJC to adopt the reasoning set forth in a line of loss of consortium cases from other jurisdictions that adopted the rule of *lex loci delicti* and concluded that the law of the place of the wrongful conduct, rather than that of the marital domicile, should apply. See id. The SJC decided the case on separate grounds and declined to rule on the loss of consortium issue. However, it made several comments that are useful for the instant analysis. The Court noted that "Even though we need not decide the issue in this case, we note that we could reject the defendant's analogy to consortium cases on the additional ground that we would not follow their approach . . . there is some support in our case law for a different approach to the choice of law problem in consortium cases from that espoused by the cases on which defendant relies." Id. The SJC cited several cases in which other courts had recently rejected the argument that the law of the place of the tortious conduct controls in loss of consortium cases. See id., at n. 8, citing Card v. American Brands Corp., 401 F.Supp. 1186, 1888 (E.D.N.Y.1975)(holding that the law of the state of the marital domicile applies, rather than the law of the state where the accident occurred, as the claimed injury in a loss of consortium claim is an injury to the marriage); Berghammer v. Smith, 185 N.W.2d 226, 231 (Iowa 1971)(holding that the state of the marital domicile "has the most significant- - indeed, perhaps the only - - relationship with plaintiff and the issue of her right to maintain an action for loss of consortium. We reach this conclusion because only [the marital

domicile state] is concerned with the marital status of plaintiff and the interspousal rights and duties arising therefrom.").

The SJC has commented that "the appropriate analysis is to examine the nature of claims, not the source of the injuries." Feltch v. General Rental Co., 383 Mass. 603, 608 (1981). The purpose of a spousal loss of consortium claim is to "compensate for the loss of the companionship, affection and sexual enjoyment of one's spouse." Agis v. Howard Johnson Co., 371 Mass. at 146. The underlying purpose of a child's loss of parental consortium claim is to protect a child's need for parental society, love, and nurturing. See Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. at 516.

Here, although Renee was injured in Maine, the plaintiffs are all residents of Massachusetts. The children returned to Massachusetts on the same day, immediately following the accident, and consequently they suffered the loss of consortium entirely while in Massachusetts. See Bergin, 326 F.Supp.2d at 183. As noted above, tort claims are generally governed by the law of the state where the injury occurred, unless another state has a more significant relationship to the cause of action. The nature of a loss of consortium claim leads to the conclusion that Massachusetts clearly has a more significant relationship to the cause of action. Accordingly, Massachusetts law shall apply to the loss of consortium claims.

B. Contract Claims

The claims for Breach of the Implied Warranty of Habitability (Count II) and

Interference with Quiet Enjoyment of the Premises (Count III) sound in contract. [1] With regard to contract claims, Massachusetts courts "appl[y] the substantive law of the state which has the more significant relationship to the transaction in litigation." Dunfey, 824 F.Supp. at 20 (internal citation omitted). Factors that are to be considered in making a determination of which state has the most significant relationship include: "1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality and place of incorporation of the parties; 6) the needs of the interstate and international system; 7) the relevant policies of the forum; 8) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; 9) the protection of justified expectations; 10) the basic policies underlying the particular field of law; 11) certainty; and 12) the ease in the determination and application of the law to be applied. Id. at 20, citing Contintental Bank, Nat. Ass'n v. Village of Ludlow, 777 F.Supp. 92, 99 (D.Mass.1991).

The subject matter of the contract is the campsite, which is located in Maine, and the contract was performed in Maine.[2] Both of these claims pertain to the plaintiffs' use and enjoyment (or lack thereof) of the campsite. Defendant cites to Maine law in its Motion for Summary Judgment, and plaintiffs do not dispute that Maine law applies. Accordingly, Maine law will apply to the contract claims.

---

[1] Renee and Paul Messana also bring claims for Impairment of Earning Capacity. These claims will be discussed below.

[2] In addition, the contract was presumably signed in Maine, although that is not clear from the record.

## III. DISCUSSION

A. Standard

Defendant has moved for Judgment on the Pleadings and/or Summary Judgment. A Motion for Judgment on the Pleadings is governed by Fed.R.Civ.P. 12(c), and is analyzed in a similar manner as are motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). See Collier v. City of Chicopee, 158 F.3d 601, 602-603 (1st Cir.1998)(citations omitted). A Complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When reviewing a motion to dismiss, the Court must "accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, [the Court] must deny the motion to dismiss." Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). The Court is to draw all reasonable inferences in the plaintiffs' favor. See Coyne v. City of Somerville, 972 F.2d 49, 51 (1st Cir. 1990).

The rules provide that "[i]f, on a motion [under Rule 12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56 . . ." Fed.R.Civ.P. 12(b)(6). Defendant has included the term "summary judgment" in the title of its motion, and both parties have submitted supplementary documents beyond the Complaint for the Court to review. I have examined the full record before me, and therefore will treat this as a motion for summary judgment. See Garita Hotel Limited Partnership v. Ponce Federal Bank, 958 F.2d 15, 19 (1st

Cir.1992).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rogan v. City of Boston, 267 F.3d 24, 26 (1st Cir.2001), citing Fed.R.Civ.P 56(c). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

B. Release of Liability

Defendant argues that all of Renee and Paul Messana's claims are barred because Paul signed the Lease Agreement which included a release of liability. Contrary to plaintiffs' argument, Maine law provides that "clauses to save a party harmless from damages due to negligence may lawfully be inserted in contracts . . . and such clauses are not against public policy." Emery v. Waterhouse Co., 467 A.2d 986, 993 (Me.1983).

It should first be noted that defendant's argument that Renee is bound by the release because Paul acted as her agent is erroneous as a matter of law. Defendant offers the affidavit of Elaine Burnham, which asserts that Paul Messana acted Renee's representative and signed the Lease Agreement on her behalf. However, this affidavit merely states a legal conclusion without offering any facts or evidence in support thereof. "A release is a contract that can only bar a

claim if the claimant was a party to the agreement." Hardy v. St.Clair, 739 A.2d 368, 371 (Me.1999). Renee did not sign the lease and thus was not a party to the contract, and can not be bound by any release language.

Because Paul Messana did sign the Lease Agreement, he is bound by the contract if the language of Paragraph 5 is sufficient to create a release of liability. Maine courts "have traditionally disfavored contractual exclusions of negligence liability and have exercised a heightened degree of judicial scrutiny when interpreting contractual language which allegedly exempts a party from liability for his own negligence. If an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff." Doyle v. Bowdoin College, 403 A.2d 1206, 1207 (Me.1979).

The Court in Doyle sought guidance from the Supreme Court of Pennsylvania, which held that "contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law . . . such contracts must spell out the intention of the parties with the greatest of particularity . . . and show the intent to release from liability beyond doubt by express stipulation and no inference from words of general import can establish it . . . such contracts must be construed with every intendment against the party who seeks the immunity from liability . . ." Id. at 1207-1208, quoting Employers Liability Assurance Corp. v. Greenville Business Men's Assn., 423 Pa. 288 (1966)(internal quotations omitted).

The two alleged releases at issue in Doyle contained the following language: "I understand that [defendants will not] assume any responsibility for accidents and medical or dental expenses incurred as a result of participation in this program" and "I fully understand that

[defendants] will accept no responsibility for or on account of any injury or damage sustained by [the child] arising out of the activities of the said clinic. I do, therefore, agree to assume all risk of injury or damage to the person or property of [the child] arising out of the activities of the said clinic." Doyle, 403 A.2d at 1207. The Court concluded that because the documents contained no *express reference* to defendants' liability for their own negligence, they were not releases of liability. Id. at 1208.

In another case, the Maine SJC upheld a purported release of liability because its language contained a specific reference to negligence of the party seeking immunity. See Lloyd v. Sugarloaf Mountain Corp., 833 A.2d 1, 4 (Me.2003). The release stated, in pertinent part, "I release and forever discharge [defendant] from any and all liability, claim, loss, cost or expense, and waive and promise not to sue on any such claims . . . arising directly or indirectly from or attributable in any legal way to any negligence, action or omission to act of [defendant and its agents]." Id. at 3.

Turning to the instant matter, the language of the alleged release in Paragraph 5 of the Lease Agreement is more akin to that of the purported releases in Doyle that the Maine SJC rejected. Although Paragraph 5 provides that "[t]he LANDLORD shall not be liable to TENANT for injury or damage, *however caused*, to any person or property on the leased premises," (emphasis added), the provision does not sufficiently spell out the parties' intent to extinguish the negligence liability of the campground. See Lloyd, 833 A.2d at 4. Construing the language against the campground as the Court must, I find that Paragraph 5 of the Lease Agreement does not amount to a release of liability. Therefore, Paul Messana is entitled to assert claims resulting from injury to Renee.

C. Negligence (Count I)

In Count I of the Complaint each plaintiff asserts a negligence claim. To establish a *prima facie* case of negligence under Maine law, plaintiffs must show that 1) a duty was owed; 2) that the defendant breached that duty; and 3) that the plaintiffs' injuries or damages were proximately caused by breach of that duty. See Parrish v. Wright, 828 A.2d 778, 783 (Me. 2003).

Defendant moves for summary judgment as to all plaintiffs except Renee Messana on the ground that under Maine law only those persons who suffered direct injury or harm are entitled to sue. See Champagne v. Mid-Maine Medical Center, 711 A.2d 842, 846 (Me. 1998). Plaintiffs do not dispute this proposition of law, but they argue that they each suffered direct injury. In their Opposition, plaintiffs argue that Paul Messana sustained emotional injuries and the destruction of his tent. In addition, the Opposition argues that Ariana suffered minor scratches and bruises, and that she and Raymond both suffered simply by virtue of being in the tent when it was hit by a tree. Finally, they contend that Paul DeMeo has been suffering emotionally since the accident.

It is reasonable to conclude that Paul Messana's tent was destroyed. It was hit by the tree, and a doctor, who was also a guest at the campground and came to the site to lend assistance, cut the tent open with a knife. (Deposition of Paul DeMeo, Docket # 20-4, page 8). Therefore, Paul Messana has asserted a viable claim for negligence. However, Plaintiffs do not offer sufficient factual support for their claims that Ariana and Raymond were injured.[3] As the non-movants at the summary judgment phase, Plaintiffs' burden is to "establish the existence of at least one issue

---

[3] Plaintiffs' arguments that Paul Messana and Paul DeMeo suffered emotional injuries will be addressed in the discussion of their claims for negligent infliction of emotional distress.

that is both 'genuine' and 'material'." Kelly v. United States, 924 F.2d 355, 357 (1st Cir.1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. "In so doing, the nonmovant may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact." Kelly v. United States, 924 F.2d at 357 (citation omitted).

"The conventional means of documenting issues of fact to avoid summary judgment is by affidavit." Id. at 358. Defendant has submitted one affidavit in support of its motion, and plaintiffs have filed none in opposition, nor did they submit "depositions, answers to interrogatories, and admissions" to show that a factual dispute exists with regard to the negligence claims. Id., citing Fed.R.Civ.P. 56(c). The only documents submitted with their Opposition were two pages of Paul Messana's deposition, and one page of Paul DeMeo's deposition (Docket # 25-2). No portion of these transcripts contains any evidence of injury to anyone other than Renee and the tent. Accordingly, defendant's motion for summary judgment as to Count I is hereby GRANTED as to all plaintiffs except Renee and Paul Messana.

D. Breach of the Implied Warranty of Habitability (Count II)

Maine law provides that every lease carries with it an implied warranty of habitability. The statute provides that "[i]n any written or oral agreement for rental of a dwelling unit, the landlord shall be deemed to covenant and warrant that the dwelling unit is fit for human habitation." 14 M.R.S.A. § 6021 (2). The statute further provides that "The term 'dwelling unit' shall include mobile homes, apartments, buildings or other structures, including the common areas thereof, which are rented for human habitation." Id., § 6021 (1). While defendant contends

that the Maine statute contains no protection for outdoor campsites, plaintiffs argue that the lease should enjoy the same protection as any other lease that creates a landlord and tenant relationship, as defendant knew that the campsite would serve as the family's primary residence for the summer season. It is not necessary for this Court to decide whether the statute would extend protection to an outdoor campsite, nor is it necessary to decide whether plaintiffs have a claim under the Common Law.

In support of its Motion for Summary Judgment, defendant supplies the affidavit of Elaine Burnham, co-owner of the campground. She states that the campground was habitable at all times. (Burnham Affidavit, ¶ 19). Plaintiffs offer no evidence to rebut this assertion and to show that there is a genuine issue of a material fact. Although Paragraph 6 of their Statement of Disputed Material Facts does state that "the campsite was no longer habitable after the tree fell on July 1, 2002," plaintiffs do not offer or cite any evidence that would be admissible at trial to support this assertion. See Kelly v. United States, 924 F.2d at 357. Because plaintiffs have failed to provide an affidavit or deposition testimony to support their claim, defendant's motion for summary judgment is hereby GRANTED as to Count II.

E. Interference With Quiet Enjoyment of Premises (Count III)

A tenant has right to quiet enjoyment of his dwelling. See State v. DeCoster, 653 A.2d 891 (Me. 1995). Defendant moves for summary judgment on the ground that isolated one time events, such as the tree falling, do not constitute interference as a matter of law. Rather, defendant argues, a claim for interference with quiet enjoyment contemplates ongoing noises, lights, or other nuisances. Plaintiffs counter in their Opposition that the dead tree "remained [at

the campsite] for a lengthy period of time" and thereby constituted an ongoing nuisance. Neither side cites any case law to support their contentions, nor do plaintiffs provide any factual support in the form of an affidavit or deposition testimony. Accordingly, for the same reasons stated above with regard to the claim for breach of the implied warranty of habitability, defendant's motion is hereby GRANTED as to Count III.

F. Negligent Infliction of Emotional Distress (Counts IV through IX)

In Count IV Renee Messana asserts a claim for negligent infliction of emotional distress. In Maine, in cases where more than one tort is alleged, a claim for negligent infliction of emotional distress is "usually subsumed in any award entered on the separate tort," provided that the separate tort allows for recovery for emotional distress. Curtis v. Porter, 784 A.2d 18, 26 (Me. 2001);see also Richards v. Town of Eliot, 780 A.2d 281, 293 (Me. 2001)(upholding summary judgment on claim for negligent infliction of emotional distress when plaintiff had a viable claim for excessive force, which would entitle her to award of damages for emotional distress). Renee has a viable claim for negligence, which allows for recovery for emotional suffering. Accordingly, summary judgment shall enter for the defendant on Count IV of the Complaint.

Paul DeMeo asserts his claim for negligent infliction of emotional distress in Count V. Maine law allows claims for negligent infliction of emotional distress in "bystander liability cases." Curtis, 784 A.2d at 25. In order for DeMeo as a bystander- plaintiff to recover for emotional distress caused by defendant's injury to his mother, he must establish: 1) that he was present at the scene of the accident; 2) that he suffered serious mental distress as a result of

contemporaneously perceiving the accident; and 3) that he was closely related to the victim. See Champagne, 711 A.2d at 846. Clearly, DeMeo meets the requirements of the first and third prongs. The relevant question for present purposes is whether he contemporaneously perceived the accident.

Defendant argues that although DeMeo was in the general area where the accident occurred, there is no evidence that he contemporaneously witnessed the tree falling. Plaintiffs argue in their Opposition that DeMeo heard the tree falling and hit other trees on its way down, and knew that his mother and siblings were in the area.

The Maine courts have been clear that in order to recover, a plaintiff must actually witness the injury as it occurs. In Champagne, a mother whose newborn baby was breast-fed by another patient in a hospital's maternity ward brought suit for, *inter alia*, negligent infliction of emotional distress. Maine's Supreme Judicial Court upheld the lower court's grant of summary judgment dismissing the claim on the grounds that the mother did not witness the baby being nursed by the wrong mother, and therefore was not a bystander. Id. at 846-847. Likewise, in Cameron v. Pepin, 610 A.2d 279, the Maine SJC dealt with the issue of whether a person who was not at the scene of an accident but subsequently witnessed the victim's suffering can recover for negligent infliction of emotional distress. The court held that the defendant's duty to the parents of a child injured in an automobile accident is limited to the emotional distress that parents experience upon *actually witnessing* their child receive an injury. See id. at 284.

The analysis was slightly different in the matter of Purty v. Kennebec Valley Medical Center, 551 A.2d 858 (Me.1988), in which a mother of a newborn baby asserted a claim for

negligent infliction of emotional distress after complications during delivery that led to the baby's death. The court rejected defendants' argument that the complaint was insufficient as it did not assert that the plaintiff witnessed or observed the allegedly negligent conduct. The Court ruled that "the allegation of her contemporaneous involvement in all that went on . . . is sufficient." Id. at 860.

The instant matter presents a close question, as DeMeo was situated in the same campsite as his mother, heard the tree falling, and then heard it hit the ground. To a certain extent, therefore, he was arguably "contemporaneously involved" in the incident and witnessed it in the sense that he heard the tree as it was falling to the ground and when it landed. However, there is no evidence that as he heard the tree fall and crash, he was aware of the fact that the tree was heading for, and then had hit, his mother's tent. See, e.g., In re Air Crash Disaster Near Cerritos, California, 967 F.2d 1421 (9th Cir. 1992)(distinguishing case of plaintiff perceiving ongoing accident in which plaintiff perceives that his family is suffering from cases "in which the plaintiffs did not know until the accidents were over that their children were the victims of the accidents"). Here, although DeMeo perceived the tree falling, he did not know until after the fact that the tree had hit his mother's tent. This differentiates our facts from those of Purty, in which the mother was in the room and was aware that hospital staff were treating her baby. Therefore, defendant's motion is hereby GRANTED as to Count V.

Raymond, Paul, and Ariana Messana assert claims for negligent infliction of emotional distress in Counts VI, VII, and VIII, respectively. There is simply no evidence in the record that any of them suffered serious emotional distress as a result of the accident. Therefore, defendant's motion will be GRANTED with respect to Counts VI, VII, and VIII.

G. Impairment of Earning Capacity (Counts IX-X)

Renee and Paul Messana bring claims for impairment of earning capacity in Counts IX and X, respectively. Defendant argues that impairment of plaintiffs' earning capacities is merely a component of damages, rather than a separate cause of action. Plaintiffs, in their Opposition, offer no cases in support of the proposition that impairment of earning capacity is a separate cause of action. Plaintiffs can recover this type of damages as part of any recovery on their negligence claims, and would be expected to introduce evidence of the loss of earning capacity and the causal connection to the injury if this case reaches the damages stage. Summary judgment shall enter for the defendant on Counts IX and X.

H. Loss of Consortium (Counts XI-XIV)

Defendants do not challenge Paul Messana's claim for loss of consortium, Count XI, but they do challenge the children's claims for loss of Renee's consortium. Maine does not recognize such a cause of action on behalf of children. Durepo, 533 A.2d at 264. However, as noted above, the Court will apply Massachusetts law to the loss of consortium claims.

The record contains sufficient evidence to create a genuine issue as to whether the children suffered the loss of their mother's society. Sworn deposition testimony revealed that "[[t]he kids] walk on eggshells as well now. They see when mommy's in a mood, they have to stay away or not to ask, Can I go do this, Can I do that, Can I have this, Can I have that. They know. They can sense when she is in a mood, and they kind of stay away a little bit, too." (Deposition of Paul Messana, Docket #20-4, p. 4). Renee was confined to her room for a period

of time, (Deposition of Paul Demeo, Docket #20-4, p.9), and after the accident, her "ability to carry out functions as she normally would" was impeded, as she was sleeping a lot and not attending to her children. (Deposition of Jennifer Lauretti, Ph.D., Docket # 20-4, p.21). Accordingly, defendant's motion is DENIED as to Counts XI through XIV.

CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is ALLOWED IN PART, AND DENIED IN PART. Summary Judgment shall enter in favor of defendants on Counts I (except as to Renee and Paul Messana) through Count X. Remaining to be tried are Renee and Paul Messana's claims for negligence in Count I, and all of the loss of consortium claims in Counts XI-XIV.

Trial of this matter shall commence on June 5, 2006 at 9:00 A.M. See Order Setting Case for Trial entered on this same date for details.

SO ORDERED.

/s/ Leo T. Sorokin
United States Magistrate Judge