UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RENEE MESSANA, et al., | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Docket No. 04-11913-MLW |
| ACRES OF WILDLIFE CAMPGROUND, INC., | ) | |
| Defendant | ) | |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to Local Rule 16.5 (D), the Plaintiff and Defendant submit this Joint Pretrial Memorandum.

1. **Summary of the evidence:**

    **Plaintiff:**

    The concept of Negligence includes a land owner's failure to use ordinary care under the circumstances in maintaining the premises. Defendant breached its duty of care when it allowed an unsafe dead tree to remain on the premises, which an ordinary, careful person would not have allowed in the same situation. The breach of this duty caused damages for the Plaintiffs.

**Defendant:**

The campground is a rustic and natural "wildlife" area, consisting of 250 campsites. Michael Baptista and his sister, Elaine Baptista Burnham, own Acres of Wildlife. The company has always been family-owned since it was originally purchased by Michael and Elaine's parents in 1980. The campground has a lake and additional amenities, including a recreation hall and playgrounds.

Paul and Renee Messana, citizens of Massachusetts, were long-time seasonal patrons of the Campground, which is located in Steep Falls, Maine. Prior to the accident, they had camped there for twelve years, and had the same seasonal campsite (site 20 on Raccoon Road), for the five years prior to the accident.

At approximately 7:45 a.m. on July 1, 2002, while Renee was sleeping in a tent with two of her children, Ariana and Raymond on the outer edge of Campsite 20, a tree fell on Ms. Messana, hitting her primarily on the head, rendering her unconscious. The tree that fell, one of many in the 300-acre campground, was located fifty feet away from the Messanas' campsite in a

heavily wooded area, away from any other campsites and away from any campground activity.

Upon hearing of the accident, Elaine Burnham immediately called 911. EMTs camping at the campground attended to Ms. Messana until the ambulance arrived. Ms. Messana was then rushed to Maine Medical Center in Portland, Maine, for treatment. At the hospital, emergency physicians determined Ms. Messana suffered skull and sinus fractures with extensive swelling around the eyes. She was placed in the intensive care unit for six days before being discharged.

Renee was bed-ridden for a few months following the accident. Fortunately, her fractures healed in due course, and she had successful sinus obliteration surgery in May of 2003.

2. **Established Facts:** (Taken in part from Memorandum and Order on Defendant's Motion for Summary Judgment on the Pleadings and/or Summary Judgment)

   1. Acres of Wildlife Campground (the campground) is located in Steep Falls, Maine.

   2. On September 2, 2001, Paul Messana signed a Lease Agreement as the Tenant in order to secure a comp site for the next season, which ran from May 1, 2002 through October 14, 2002.

3.   Paragraph 5 of the Lease Agreement provided in pertinent part that "the LANDLORD shall not be liable to TENANT for injury or damage, however caused, to any person or property on the leased premises. Your RV should be insured at all times. The Landlord is not responsible for damages done by weather or intruders."

4.   This Court ruled in its *MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT* dated April 24, 2006 that Paragraph 5 of the Lease Agreement does not amount to a release of liability.

5.   On the morning of July, 2002, the plaintiffs, all residents of Massachusetts were present at the campsite. Renee Messana was asleep with two of her children Raymond and Ariana in one tent located on a raised platform. Paul Messana was making coffee in the family's trailer on the site, and Paul Demeo, Renee's son was alone in a different tent on the site.

6.   At approximately 8:00 am, a dead and barkless tree fell onto the tent occupied by Renee, Raymond, and Ariana.

7.   Paul Messana and Paul Demeo both heard cracking noises and the sound of branches breaking as the tree was falling.

8.   Paul Messana saw the tree as it fell, and then saw it hit the tent in which his wife and two children were sleeping.

9.   Paul Messana ran over to the tent and picked the main part of the tree off of the tent.

10.  Immediately thereafter, Paul DeMeo, who had been awoken by the sound of the tree as it came down, came out of his tent and pulled a smaller piece of the tree off of the tent and tried to open the tent while Paul Messana kept holding the

   tree up to prevent it from falling back on the tent.

11. Paul DeMeo ripped the tent open and Paul Messana called to Renee, but she did not respond.

12. The tree had fallen on Renee, and she lay still with a bloody face as Paul Messana attempted to lift the tree off of her.

13. Paul DeMeo extricated Raymond and Ariana, both of whom appeared to be fine, from the tent and asked them to go play in the trailer.

14. Renee was rushed to the hospital, where she was diagnosed with multiple severe facial, skull and sinus fractures, with extensive swelling around the eyes.

15. Renee remained hospitalized for six days and then returned to Massachusetts.

16. The day after Renee returned to Massachusetts she was admitted to Boston Medical Center on July 9, 2002 and remained there for three days.

17. Renee was released from Boston Medical Center and was subsequently referred to Dr. Mark A. Varvares of the Massachusetts Eye and Ear Infirmary by Dr. Feo Ung an Otolaryngologist.

18. Renee underwent sinus obliteration surgery on May 14, 2003 and was discharged from the Mass Eye and Ear Infirmary on May 17, 2003.

19. The fact that the tree fell and injured Ms. Messana is not disputed. Generally, what occurred on July 1, 2002 is not disputed. Ms. Messana's medical records for the most part are not in dispute. To some extent, Defendant does not dispute that Ms. Messana suffered physical and emotional injuries as a result of tree falling on her head.

3.     **CONTESTED FACTS:**

**Defendant:**

Factual issues in dispute are whether the Defendant breached the standard of care, the extent to which the accident proximately caused Ms. Messana to suffer physical and emotional injuries, and the extent Paul Messana, Paul DeMeo, Ariana and Raymond have suffered loss of consortium.  Defendant also reserves the right to assess the comparative negligence.

1.   Breach of Standard of Care

Plaintiffs, who have not designated a campground expert, nevertheless claim that Defendant breached the proper standard of care because the tree fell on Ms. Messana.  Defendant, however, arranged for an inspection every year.  Because campers were responsible for their own campsites, at the beginning of each season, Defendant invited seasonal campers to the campground for a weekend to work on the campground, and address safety issues. Campers were instructed to notify the campground immediately of any hazards (which includes dead trees). In fact, campers inspected the campground, cleaning sites and looking for hazards.  The Messanas did not attend.

During the season, campground employees were told to "always be on the lookout" for hazards, including dead

trees. The campground employees also held daily meetings. At the meetings, employees were required to raise concerns including safety issues.

In addition to these "general practices," Michael Baptista managed a crew that removed dead trees requested by campers. Trees were removed "as soon as possible." In this case, the Messanas did not inspect the premises, and therefore, did not put the campground on notice that the tree was dead.

    2.   Causation/Damages

    a.   Hearing loss/Loss of Smell

Ms. Messana claims she had hearing loss for six months and for two months her ears "were ringing" and she would "hear noises." Dr. Ung, an ENT, however, performed an exam during that time period and found her ears to be "normal". Dr. Mark Vavares, an ENT who performed the sinus obliteration surgery on Ms. Messana in May of 2003, agreed that his records did not reflect any complaints of loss of smell, loss of hearing, sensitivity to light or sensitivity to loud noises over the course of several months in early 2003, nor did he recall Ms. Messana making any of these complaints. If Ms. Messana had made these complaints, he would have noted these complaints on his records.

b.  Sinus Issues

Because her sinus was cracked and posed a threat of meningitis, she was referred to Dr. Varvares for sinus obliteration surgery.  Dr. Varvares opined that the surgery had a 95% chance of making her "symptom-free."  The surgery (performed in May 2003) was successful, and most of her symptoms have resolved.  In fact, Dr. Ung noted on February 4, 2003 that she was "completely asymptomatic at this point and [did] not have any evidence of current sinus disease."  Nevertheless, Ms. Messana continues to have ongoing sinus issues and headaches, which she claims are related to the accident.  She claims to have headaches two or three times a month on "the top of her head," which usually last two to three days.  The headaches, however, as Dr. Varvares testified, could be related to stress or other causes.

The sinus issues also are pre-existing problems she had prior to the accident.  Her pre-existing sinus problems, which consist of mostly sinus infections and allergies, are well documented in her primary care physician's medical records.

c. Memory Loss

Ms. Messana claims have memory loss.  For example, she cannot remember her son's date of birth.  She cannot

recall anything about her father, but admitted this "has nothing to do with the accident." No physician has been designated to speak to these issues, nor has any treating physician diagnosed her with memory loss.

d. Emotional Distress

At her initial visit with her therapist, Dr. Jennifer Lauretti, in January of 2005, Ms. Messana reported stress with the upcoming court case, that she had interrupted sleep patterns, that she generally had a feeling of "being overwhelmed," "feeling depressed," that she worried a lot about her children, and that she felt "tired a lot."

At Ms. Messana's initial visit, Dr. Lauretti made a clinical diagnosis of posttraumatic stress disorder (related to the accident) and dysthymic disorder, which is a "mood disorder." Dysthymic disorder means that someone is depressed, but it would not "fit the category of major depression." Major depression has mild, moderate and severe categories. Therefore, Ms. Messana's dysthymic disorder was essentially a very moderate depression.

As Ms. Messana testified, Dr. Lauretti noted that Ms. Messana felt "overwhelmed, stressed, depressed, anxious" which, according to Dr. Lauretti, impeded Renee's ability

to perform basic day-to-day functions. Her anxiety was attributed to feeling tired, not being able to do certain things around the house, and wondering what impact this would have on her marriage and her children. Dr. Lauretti could not recall what specific things Ms. Messana stated she could not do around the house, but recalls Ms. Messana stating that her inability to do these things was attributed to the accident. Ms. Messana did not say why she felt the accident caused her to be unable to perform certain things around the house, nor did Dr. Lauretti make an assessment as to whether she was in fact unable to do certain activities, and whether this was related in any way to the accident.

Ms. Messana has had some prior emotional issues and other stresses unrelated to the accident. When asked whether her prior issues involving abuse by her alcoholic mother could be contributing to her stress and anxiety, Dr. Lauretti said "it is possible." Dr. Lauretti stated it is difficult to distinguish between previous and current stressors. She has not addressed this issue in detail while treating Ms. Messana, and therefore, she has not ruled out or made a determination as to whether pre-existing issues have had any effect on Ms. Messana's

current symptoms of feeling overwhelmed, depressed and anxious.

Likewise, although Dr. Lauretti opined that Renee is irritable "since the accident," Dr. Lauretti admitted that she had not treated Renee prior to the accident, nor discussed Renee's disposition prior to the accident with regard to any of her conditions.

3. Loss of Consortium

Ms. Messana claims she has had emotional problems with her husband since the accident and she is not as close with her children.  When asked to describe her relationship with her children, she said they love her.  They do not want to leave her.  She is very affectionate with them.  However, she cannot do certain things with them anymore.  When asked why she cannot do things with her children anymore, Ms. Messana stated she does not have the patience.  "They're loud.  They just make me nervous."  She admitted, however, there is nothing about her physical condition that prevents her from being with her children.

Mr. Messana claims that their marriage has deteriorated since the accident.  Defendant maintains to the extent that Mrs. Messana's emotional issues have caused distress

on their relationship, these issues were caused by other unrelated/pre-existing stressors.

4. **Jurisdictional Questions:**

   None

5. **Any questions raised by pending motions:**

   **Plaintiff:** Plaintiffs will file two Motions in Limine regarding the following:

   a. Whether the release language contained in the contract between the parties may be redacted because its prejudicial effect is greater than its probative value and further more, in the memorandum of order the court ruled that the language did not apply to the parties.

   b. Whether Mr. and Mrs. Manuel Baptista should be prevented from testifying because they were neither owners nor witnesses, nor present at the campsite on the date of the accident.

   **Defendant:**

   Defendant contemporaneously with its pretrial brief has filed motions *in limine* to exclude evidence of

alleged injuries that are not substantiated by physician testimony or medical records.  See Local Rule 26.4.  Defendant also has filed a motion *in limine* to exclude any evidence of emotional distress suffered by Plaintiffs either while witnessing the accident or subsequently, to the extent not relevant to Plaintiffs' loss of consortium claims.

6. **Issues of law, including evidentiary questions, together with supporting authority**

   **Plaintiff:**

   **a. Issue:**   Whether the Maine Recreation Statute M.R.S. 14, §159 is a defense to the Plaintiff's claim of negligence.

   **Legal Analysis:**  Section 4 of the statute restricts its application "for an injury suffered in any case where permission to pursue any recreational or harvesting activities was granted for a consideration……."  Clearly the statute on its face and its legislative intent was to protect land owners who allowed the public free access to their property but placed a higher burden to land owners who charged the public for access.  The Messanas paid by contract to use the campground.  Therefore, the statute is not a defense to the negligence claims of the

Plaintiff placing the defendant within the purview of his common law duties.

**b. Issue:** Whether the Defendant under common law owed a duty to the Plaintiffs of removing the tree that fell on Rene Messana.

**Legal Analysis:** Maine has abolished the common law distinctions between licensees and invitees, and accordingly, under Maine's law of premises liability, a landowner owes a duty of reasonable care to all those lawfully on the land. <u>Poulin v. Colby Coll</u>., *402 A.2d 846, 851 (Me. 1979)* and has adopted the Restatement (Second) of Torts §343 and its subsections in analyzing it. <u>Isaacson v. Husson Coll</u>., *297 A2d98, 105 (Me. 1972)*

Since the dangerous condition and risk of the tree was not obvious to the Plaintiffs, Restatement §343 applies providing that: A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, and only if. He

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees and

(b)   should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The first element (a) is satisfied by the testimony already presented in Michael Baptista's deposition (pg.27, line 6-16) where he acknowledges that he was told by Mr. Messana prior to the accident that there were dead trees in the area of his campsite that needed to be cut down.  The reason Mr. Baptista routinely cut down dead trees is because he knew that it was a safety issue thereby involving an unreasonable risk of harm to the Plaintiffs.

The second element (b) is satisfied because even though the Plaintiffs realized that there were dead trees on and around the campsite, they did not have the expertise to determine which one would fall and injure them. Further, the Defendant must realize that the Plaintiffs would *fail to protect themselves* because they had neither the ability nor authority to cut the trees down to protect themselves.

The third element (c) is satisfied because Mr. Baptista did not remove the unsafe tree which was a failure

to exercise reasonable care and thereby created the proximate cause of the Plaintiffs' injuries.

In the alternative, if §343 A(1) of the Restatement is found to apply, it provides: "A possessor of land is not liable to his invitees for physical harm caused by them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The Plaintiffs and the Defendant both were aware of the dangerous condition but the possessor (defendant) was in the only position to act upon such knowledge and thereby should have anticipated the harm.

**Defendant:**

Defendant does not foresee any issues of law or evidentiary issues, other than the pending motions *in limine*.

**7. Any requested amendments to the pleadings:**

Parties do not intend to request leave of Court to amend their pleadings.

**8. Any additional matters to aid in the disposition of the action.**

(a)   Plaintiff's two Motions in Limine

    (b)   Plaintiff's Motion to limit the scope of depositions.

**9. Probable length of trial:**

Four to Five days.

**10. Witnesses:**

By agreement of counsel, counsel will have the transcripts and/or the videotaped depositions of the Witnesses at the pretrial conference on June 1, 2006.

**Plaintiff:**
- (a) Renee Messana
- (b) Paul Messana
- (c) Paul DeMeo
- (d) Raymond Messana
- (e) Ariana Messana
- (f) Denise DeMeo
- (g) Josephine Messana
- (h) Maria Bussell, Keeper of Records, City of Everett.

All of whom are fact witnesses.

**Defendant:**
- (a) Elaine Burnham, Fact Witness
- (b) Michael Baptista, Fact Witness
- (c) Manuel Baptista, Fact Witness
- (d) Maria Baptista, Fact Witness
- (e) Dr. Mark Vavares, Fact Witness/Expert Witness. Dr. Vavares' testimony will be presented by deposition. Dr. Vavares is an ENT, and associate professor at the St. Louis University Hospital in St. Louis, Missouri. Dr.

        Vavares has over 20 years of experience as an ENT.

**11. Joint List of Exhibits:**

By agreement of counsel, counsel will have the exhibitss at the pretrial conference on June 1, 2006.

  (a)  Copies of Medical Records from Maine Medical Center for Renee Messana beginning in July, 2002.

  (b)  Copies of Medical Records from Boston Medical Center for Renee Messana beginning in July, 2002.

  (c)  Copies of Medical Records from Dr. Shapur A. Ameri, Boston Regional Medical Center of Renee Messana from September, 2002.

  (d)  Copies of Medical Records from Massachusetts Eye and Ear Infirmary for Renee Messana beginning in January, 2003.

  (e)  Copies of Dental Records from Peter A. Capodiupo, 563 Broadway St. #21, Everett, MA, of Renee Messana beginning October, 2003.

  (f)  Copies of Medical Records from David E. Eisenberg, M.D., 111 Everett Ave. Chelsea, MA of Renee Messana beginning August, 2002.

  (g)  Copies of Medical Records from Jennifer Lauretti, Ph.D., of Renee Messana beginning January, 2005.

  (h)  Copies of all bills/prescriptions relative to injuries Renee Messana sustained in July, 2002.

    (i)    State and Federal Tax Returns for Paul Messana for 2002 and 2003.

    (j)    Photographs of the site leased by the Messanas at Acres of Wildlife Campground taken in July 2002.

    (k)    Deposition transcripts of all witnesses.

    (l)    2002 Acres of Wildlife brochure.

    (m)    Ariel photograph of the campground.

    (n)    Map of the campground.

**12. Objections to Pretrial Disclosures**

The parties have no other objections to the pretrial disclosures other than the issues set forth above.

DATED: May 31, 2006

Respectfully submitted,
The Plaintiffs,
By their attorney

/s/ John W. Collier
John W. Collier
200 Monsignor O'Brien Highway
Cambridge, MA  02141
617-441-2121
BBO# 092010

**CERTIFICATE OF SERVICE**

    I, John W. Collier, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 31, 2006.

                                                      /s/ John W. Collier
                                                      John W. Collier, Esq.