UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, et al., )<br>    Plaintiffs )<br>)<br>v. )<br>ACRES OF WILDLIFE CAMPGROUND, INC., )<br>    Defendant )<br>) | Docket No. 04-11913-MLW |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
OR IN THE ALTERNATIVE A NEW TRIAL**

Pursuant to Rule 50(b) the Plaintiffs hereby request that this Court set aside the jury verdict and judgment for the Defendant and enter judgment for Plaintiffs. In support of this Motion, Plaintiffs state that no reasonable jury, applying the law as set forth in the Jury Instructions and examining all of the evidence, could find that the Defendant was not negligent, and that evidence conclusively favors the Plaintiffs such that reasonable jurors would not arrive at a contrary verdict. Plaintiffs also submit a memorandum in support of this motion and attached hereto. In the alternative, Plaintiffs pursuant to Rule 59 Fed.R.Civ.P, move for a new trial submitting that the verdict goes against the great weight of the evidence presented during trial and constitutes a miscarriage of justice that shocks the judicial conscience.

Respectfully Submitted,

*/s/ John W. Collier*
Attorney for Plaintiffs,
John W. Collier, Esq.
200 Monsignor O'Brien Hwy.
Cambridge, MA 02141
617-441-2121 Ext. 2
BBO# 092010

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RENEE MESSANA, et al.,<br>    Plaintiffs<br><br>v.<br>ACRES OF WILDLIFE CAMPGROUND, INC.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 04-11913-MLW |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I.   Introduction**

It is undisputed by either party that on July 1, 2002, Renee Messana was sleeping in a tent at the Acres of Wildlife Campground, Inc. ("Campground") located in Steep Falls, Maine, with her two youngest children when a dead tree fell on the tent, causing Ms. Messana serious personal injuries. Renee Messana brought a claim of negligence against the Defendant Campground for her injuries, and her husband, Paul Messana brought a claim of negligence and a claim for loss of consortium against the Defendant. Renee's oldest child, Paul DeMeo has also brought a claim against the Defendant, for the loss of consortium he experienced as a result of his mother's injuries.

**II.   Procedural History**

A jury trial on this matter commenced June 5, 2006, and lasted four days. At the end of the evidence, Plaintiffs moved for Judgment as a matter of law, which was later denied. A jury did not get beyond the issue of negligence, having found that the Defendant was not negligent. On June 13, 2006, the Honorable Judge Leo Sorokin,

entered the judgment of the jury's finding that the Defendant was not negligent. Plaintiffs now renew their Motion for a Judgment as a Matter of Law because Defendant was negligent on all claims, or in the alternative for a New Trial.

**III.    Choice of Law**

Pursuant to the Memorandum and Order on Defendant's Motion for Judgment on the Pleadings and/or Summary Judgment, issued April 24, 2006 by Judge Leo Sorokin, the negligence claims are governed by Maine law, and the loss of consortium claims are governed by Massachusetts law.

**IV.    Discussion**

A)  APPLICABLE LAW:

Plaintiffs now argue that no reasonable jury, correctly applying the law and examining all of the evidence in a light most favorable to Defendant, could find that the Defendant was not negligent, and that accordingly, and as a matter of law, Defendant should be held liable for its negligence. The law of negligence and the jury instructions dictate that the Defendant: (i) owed the Plaintiff the duty of exercising ordinary care to keeps its premises in a reasonably safe condition; (ii) guarding the plaintiff against all reasonably foreseeable dangers; (iii) in light of all the circumstances (Jury Instructions at Page 9). Pursuant thereto, Defendant Campground is liable if it either: a) had actual knowledge of the existence of a hazard OR b) should have known of the existence of a hazard there because of the length of time the hazard existed (Id).

B)  ACTUAL KNOWLEDGE:

Plaintiffs submit that Campground, through its employees and owners, had actual knowledge of the existence of a hazard on the Plaintiffs' campsite. In support of their position, Plaintiffs cite the testimony of Michael Baptista, co-owner of Acres of Wildlife, Inc. who admitted that Paul Messana gave him information that put him on notice as to a dangerous condition on the campsite due to dead trees. (M.B. Tr. line 6-7 at 46, June 6, 2006). Although there is some debate over whether the Defendant had knowledge of the particular tree that fell on Mrs. Messana, it is uncontested that Defendant knew about a generally dangerous condition that existed on the campsite because of dead trees. Additionally, Michael Baptista also testified that a tree with no bark and no leaves is a dead tree (M.B. Tr. lines 21-25 at 58, 1-2 at 59, June 6, 2006) and that a dead tree over 10 feet, like the one that struck Mrs. Messana, is a danger that poses a threat to his guests and requires immediate attention (M.B. Tr. lines 14-25 at 43, lines 1-16 at 44, June 6, 2006, M.B. Tr. lines 22-25 at 8, lines 1-4 at 9, June 7, 2006). Keeping in mind that Mr. Baptista is educated and experienced in the campground industry, he admits that he, as well as his staff, is able to assess which trees are dead and hazardous and which are not. The law of negligence does not require that to be held liable, Defendant had to know about the exact tree that fell, just that it had to know of "a hazard" which in this case consisted of a hazardous *condition* of the trees on the campsite, which Defendant knew about but failed to address (M.B. Tr. lines 16-19 at 48, June 6, 2006). The preposition "a" rather than "the" before the word "hazard" is an integral part of the jury instructions, and it is unreasonable for the jury to hold that a particular tree as a condition or a hazard rather than the overall dangerous condition of the site was a hazard. Therefore, since

there is no conflicting evidence on this point, Defendant actually knew of a hazard that existed and should be held liable for its negligence in failing to remove the hazard.

    C) CONSTRUCTIVE KNOWLEDGE

The law of negligence and the Jury Instructions state that Defendant is subject to liability if, acting through its employees, it *should have known* of the existence of a hazard there because of the length of time the hazard existed. (Jury Instructions page 9). Defendant should have known of the dangerous condition of campsite #20, because a reasonable inspection would have revealed the dangerous condition of dead trees, and Defendant admitted it had a duty to exercise ordinary care to keep its premises in a reasonably safe condition. During deliberations, the jury had a question about what "ordinary care" consists of under these circumstances. Although this is for the jury to determine, it must be determined within reason and in accordance with the testimony offered. Plaintiffs hold that Defendant did not practice ordinary care in inspecting the campground and that no reasonable person, when correctly applying the law, could come to a different conclusion.

When evaluating if a Defendant practices ordinary care or not, it is helpful to analyze other cases that set forth criteria of meeting this burden. Defendant testified that it had a policy to constantly inspect the campgrounds beyond the fringes of the campsites and roads. (M.B. Tr. lines 4-18 at 40, June 6, 2006.) Furthermore, Defendant testified that it had a policy to immediately assess any trees that were reported as dangerous and remove those that posed risks. (M.B. Tr. lines 4-25 at 43, June 6, 2006.) This is evidence that ordinary care consists of continuously inspecting and assessing the

campgrounds, including areas beyond the fringes of campsites and roads.  Case law sheds light on what makes an inspection reasonable and how a breach of this duty may occur.

*Smith v. United States 117 F. Supp. 525*, as in the instant case, imposes a duty of ordinary care on land owners.  In *Smith*, the Plaintiff, a fifteen year old boy, was injured while sleeping in his tent when a dead limb fell on him seriously injuring his leg.  "Mr. Braden, the forest ranger in charge of the particular camp testified that among his duties was the duty was to inspect the campsite for any dangers or hazards that might be present and to remove such hazards.  He further testified that he made an inspection of the campsite area for dead snags, dead limbs, or any thing that might be a hazard, so that they could be eliminated 'as soon as we can.'" (Id at 527-528)  The tree fell on the Plaintiff on a calm day when there was little if any wind.  All the plaintiff's witnesses testified that the limb was visibly rotten.  The ranger further testified that visible decay is a slow process taking many months.  It was admitted that the campsite was inspected one month prior to the accident but that no dead trees were found.  The Defendants in *Smith* had a similar duty to the Defendant in the case at hand, a duty of ordinary care to eliminate dangerous conditions in the campsite area.  In both Smith and this case, Defendants recognized that duty and purported to perform it.  In Smith it was held that Defendant either failed to use ordinary care in ascertaining the dangerous condition of the campsite area or failed to use ordinary care in removing such dangerous condition.  *(Id at 528.)*

*Lesser v. Camp Wildwood 282 F. Supp. 2d 139* also involves an accident in which Plaintiff was injured by a tree falling on him while camping.  The law of negligence in that case stated that the Defendant had a duty to persons coming upon his or her land to keep it in reasonably safe condition considering all the circumstances, and that the

6

Plaintiff must prove the Defendant had actual or constructive notice of the condition. The Defendant in that case also had procedures in place for tree maintenance, consisting of inspecting the bushes and trees in the active areas of the camp on a daily basis. The case states that "constructive notice will be imputed if 'the record establishes that reasonable inspection would have revealed the dangerous condition of the tree'". (*Id at 149 quoting Harris v. Village of East Hills, 41 N.Y.2d 449.)* The opinion then went on to analyze the meaning of "reasonable inspection" noting that:

> ….with a higher level of attention being given to trees that are so located that falling branches are likely to come into contact with members of the public, as compared to the attention to be accorded trees that are located some distance away from the traveled area. Relevant factors to be considered are whether signs of decay or other problems that have been observed by neighbors and other passer-by; …whether other similar trees have been found to be diseased and are removed; and the presence or absence of bark and foliage.

*(Id at 149)*

*Middaugh v. United States 293 F. Supp. 977* is another case that involves the duty to reasonably inspect a campground. In that case it was held that the decayed tree should have been discovered by routine inspection of the Campground leading to the removal thereof because of its hazardous condition. This holding was supported by the "admitted policy of the National Park Service to inspect all campgrounds for dead and diseased

7

trees and to remove those which might constitute a hazard to campers." (*Id at 979*). Like the case at hand, the Defendant in *Middaugh* did not inspect the tree in question any time prior to its collapse, and therefore it was held that the "Defendant failed to provide a safe place for the decedent to camp in that the (decay of the tree) was clearly visible to the officials had they looked." (*Id at 980*).

The issue now is that Defendant violated its own policies, and in turn failed to meet their duty to reasonably inspect their campground. Michael Baptista admits in his testimony that he did not inspect campsite #20 during the 2002 camping season (M.B. Tr. lines 16-19 at 48, June 6, 2006), although it is uncontested that he was given information, in 2000 and in 2002, to put him on notice that a dangerous condition existed (M.B. Tr lines 14-25 at 19, lines 1-9 at 20, June 7, 2006). Like in the cases cited above, had an inspection taken place, the dangerous condition of the campsite as well as the dead tree that fell on Mrs. Messana would have been found, and according to policy, removed. The truth of the matter is that Defendant did not follow policy and inspect the campsites continuously nor did it immediately assess reported risks. Defendant had no policy in place that kept records regarding tree removal and only began maintaining records in 2005. (M.B. Tr. lines 15-20 at 5, June 7, 2006). Therefore Defendant violated its own policies, as well as reasonably accepted standards for inspecting the premises in a reasonably prudent manner.

## V. Conclusion

Without weighing the evidence or the credibility of witnesses in this case, and even when taking the evidence in the light most favorable to the Defendant, the evidence and case law are still overwhelmingly in favor of Plaintiff with respect to the issue of

negligence.  The sole reasonable inference that can be drawn is that Defendant was negligent.  Defendant had actual as well as constructive knowledge of the dangerous condition that existed on the Messana's campsite, and according to the Jury Instructions given in this case, should be held liable.  The law of negligence is a difficult concept to grasp because a single word or phrase may change the outcome of a case.  Here, the jury misinterpreted the law and found the Defendant not negligent.  The verdict herein is contrary to reason and to the established precedent and if this verdict is sustained, will have devastating and chilling effects on public policy and safety as it relates to campers on private property.  As such, the verdict of not negligent must be set aside.