UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE MESSANA, PAUL DEMEO, PAUL MESSANA, <br><br> Plaintiffs, <br><br> v. <br><br> ACRES OF WILDLIFE CAMPGROUND, INC., <br><br> Defendant. | Civil Action No. 04-11913-LTS |

MEMORANDUM AND ORDER ON PLAINTIFFS' RENEWED MOTION FOR NEW TRIAL
AND/OR MOTION FOR JUDGMENT AS A MATTER OF LAW

July 27, 2006

SOROKIN, M.J.

The jury returned verdicts for the defendant on all claims: Renee Messana's claim of negligence, Paul Messana's claim of negligence, Paul Messana's claim of loss of consortium (husband) and Paul DeMeo's claim of loss of consortium (son). Now, Plaintiffs move for Judgment as a Matter of Law in their favor or, in the alternative, for a New Trial.

The standard of review for motions for judgment as a matter of law requires the court to view the evidence "in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor" and the court may allow the motion only if "no reasonable jury could have returned a verdict adverse to the moving party." Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 436 (1st Cir. 1997). The First Circuit has made clear the standard for a new trial motion.

> A verdict may be set aside and new trial ordered when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear

miscarriage of justice.  In reaching its decision, the district court has broad legal authority to determine whether or not a jury's verdict is against the clear weight of the evidence.  Nonetheless, the trial judge's discretion, although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial.  Thus, the district court judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial.  The mere fact that a contrary verdict may have been equally – or even more easily – supportable furnishes no cognizable ground for granting a new trial.

Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996) (citations and internal quotation marks omitted).

The relevant facts are as follows.  While asleep on the morning of July 1, 2002, on a site at Defendant's campground, Renee Messana was struck by a large dead tree that fell on her tent.  As a result, she suffered serious injuries.  All of the other Plaintiffs' claims derive from this incident.

Michael Baptista, an owner and employee of the defendant, testified to the following: tree removal was a priority for the campground, Michael Baptista ("M.B.") Transcript ("Tr.") at 37-38 (June 6, 2006); eight to nine employees were on the crew for tree removal, id. at 38; each spring, employees assessed the campground and cut down trees before the campers arrived for the summer season,[1] id. at 38-39; all employees were instructed to look out for hazards including dead trees, id. at 39; employees inspected areas beyond the fringe of campsites and roads, id.; and, the campground is inspected annually by an outside company for all sorts of hazards,

---

[1] Elsewhere, Baptista testified that he did not *recall* "inspecting the vicinity of the tree that fell" on Renee Messana prior to 2002.  M.B. Tr. at 48 (June 6, 2006).  Nor did he *recall* any of his employees doing such an inspection. Id.  This testimony is not inconsistent with the testimony that employees inspect the campground each spring. Id. at 39.  In any event, the jury did not have to accept this portion of Baptista's testimony.  Moreover, this testimony does not establish that Baptista failed to inspect the site, as Plaintiffs contend, Pls.' Renewed Mot. for J. as a Matter of Law or in the Alternative a New Trial ("Pls.' Mot.") at 8, but only that he did not *recall*, specifically, inspecting it.

including dead trees. Id. at 39-40.

The tree that struck Renee Messana was more than ten feet tall. M.B. Tr. at 9 (June 7, 2006). Paul Messana testified that the tree looked "very dead," had "very little bark on it," and, when he examined the roots after the accident, he found that "there was really no roots anymore, nothing holding it up." Paul Messana ("P.M.") Tr. at 20 (June 5, 2006). During cross-examination, Paul Messana testified that the tree was about twenty feet back from the campsite and about thirty-five to forty feet away from the platform where Renee Messana was sleeping. P.M. Tr. at 13. Neither party introduced photographs of the tree, although the testimony indicated that both the local police and the defendant took photographs after the accident. Elaine Burnham Tr. at 14 (June 6, 2006).

Michael Baptista testified that he recalled a conversation with Paul Messana regarding the removal of trees from the Messanas' campsite sometime in the month of June 2002.[2] M.B. Tr. at 59-60 (June 6, 2006). The jury certainly could have found him to testify only that Baptista and Messana discussed the removal of trees, M.B. Tr. at 46 (June 6, 2006), M.B. Tr. at 18-20 (June 7, 2006), but they could also have understood Baptista to testify that Messana discussed with him dead trees between the Messana site and adjoining site. M.B. Tr. at 51-53, 59-60 (June 6, 2006). Messana testified that he complained to Michael Baptista about dead trees both in the fall of 2001 and again in a 2002 conversation. P.M. Tr. at 6-10 (June 5, 2006). The evidence was clear that the tree that fell on Renee Messana did not come from the area of the site under discussion

---

[2]While the form of the testimony created some confusion regarding Baptista's memory of the date of this conversation, he eventually confirmed, clearly, that the conversation took place in 2002. See M.B. Tr. at 46, lines 16-18, at 60, lines 2-4 (June 6, 2006); M.B. Tr. at 24, lines 17-19 (June 7, 2006). Hence, the Court regards the testimony as referring to 2002.

between Messana and Baptista.

Determining what, if anything, Baptista was told about the trees, when the conversation took place, the speed with which an ordinarily prudent campground owner would respond, as well as the type of response from such a campground owner, are all quintessential jury questions. Levesque v. Anchor Motor Freight, Inc., 832 F.2d 702, 704 (1st Cir. 1987). In addition, the trees in discussion lay between the Messanas' site and an adjoining site, while the tree that struck Renee Messana did not come from this area. P.M. Cross-Examination Tr. at 14 (June 5, 2006). Any inspections or other actions required of an ordinarily prudent campground owner regarding the area from which the tree fell, in response to either a complaint about trees from a different area around the site or a request to remove trees from that other area, is a factual question for the jury. There was no evidence on this latter point.

Plaintiffs make two arguments in support of their Motions for New Trial and Judgment as a Matter of Law. As the foregoing factual recitation demonstrates, the trial presented numerous material questions for the jury to resolve. Of course, throughout these proceedings, the plaintiffs bore the burden of proof.

First, Plaintiffs point out that the jury instructions stated that Defendant is negligent if the jury finds, by a preponderance of the evidence, that Defendant "had actual knowledge of the existence of a hazard on the Plaintiffs' campsite." Pls.' Mot. at 4. They argue that Baptista knew of the dead trees between the Messana and neighboring site and therefore Defendant had knowledge of a "hazard." Id. It was for the jury to determine whether these trees constituted a hazard, as well as whether Baptista was on notice of dead trees (as Messana testified) or whether Baptista was simply going to the site to remove trees (as the jury could have found Baptista

4

testified), which could occur for a variety of reasons.

Second, Plaintiffs contend Defendant should have known of the tree that struck Renee Messana because "a reasonable inspection would have revealed the dangerous condition of dead trees." Pls.' Mot. at 5.  The only evidence regarding the condition of the tree came from Paul Messana, a witness whose testimony the jury could have rejected.  Plaintiffs, moreover, introduced no such inspection evidence.  Plaintiffs introduced no evidence of their own regarding the standard of care applicable to ordinarily prudent campgrounds, no evidence regarding inspections or safety precautions at campgrounds, no evidence regarding what a reasonable inspection entails or whether it would have led to the discovery of this tree, and no expert testimony establishing how long the tree was noticeably unsafe.  Moreover, Plaintiffs did not obtain this evidence from Defendant's witnesses.  Defendant's witnesses did testify about the defendant's safety precautions and procedures, but they gave no more detailed testimony regarding inspections beyond what has already been noted.  In addition, Defendant's witnesses asserted that this campground invested substantially greater resources than other or most campgrounds in safety precautions generally, and particularly as to trees. M.B. Tr. at 23 (June 7, 2006).  Thus, the jury could have determined that the standard of care required less than that which Defendant did.

Plaintiffs complain that Defendant violated its own policy to inspect dangerous trees immediately. Pls.' Mot. at 5, citing M.B. Tr. at 43 (June 6, 2006).  But, as already pointed out, Plaintiffs assume a fact the jury did not have to find: that Baptista was told of dangerous trees.  In any event, a violation by Defendant of its own policies is not necessarily a breach of the standard of care, especially when the only evidence regarding standard of care suggests that Defendant's

5

policies exceeded the norm. See M.B. Tr. at 34 (June 6, 2006); see M.B. Tr. at 23 (June 7, 2006).

Finally, Plaintiffs point to three cases, none of which assist their case. First, the Plaintiffs cite Smith v. United States, 117 F.Supp. 525 (N.D. Cal. 1953), as representing an imposition of a duty of ordinary care on landowners. Id. at 528. But, for purposes of the present motions there is no dispute that, as the jury instructions establish, the defendant owed a duty of care. In addition, in Smith, ample evidence (including pictures, witness testimony, and expert testimony) established that the limb that fell and injured a camper was "visibly rotten." Id. Based on the evidence presented in Smith, the court, as the finder of fact, found the campground to have breached its duty of care and thus entered judgment in favor of the plaintiffs. Id. In contrast, the finder of fact here rejected Plaintiffs' claims.

Next, Plaintiffs refer to a decision rejecting a defendant's motion for partial summary judgment (but not finding for the plaintiff as a matter of law), in which the court stated it would impute constructive notice of the dangerous tree to defendant if "the record establishes that a reasonable inspection would have revealed the dangerous condition of the tree." Lesser v. Camp Wildwood, 282 F.Supp. 2d 139, 149 (S.D.N.Y. 2003) (quoting Harris v. Village of East Hills, 362 N.E.2d 243, 245 (N.Y. 1977)). A reasonable inspection, according to the Court in Lesser, depends on a variety of facts and circumstances, in short a heavily fact dependent determination. Lesser, 362 N.E.2d at 149. The plaintiff in Lesser augmented its position with expert testimony, something not offered in this case. See id. at 150. Most importantly, Lesser stands for the proposition that the liability determination is for the finder of fact, the jury in our case.

Finally, Plaintiffs cite Middaugh v. United States, 293 F.Supp. 977 (D.Wyo. 1968), in which the Court, as fact finder, found the defendant should have discovered the decayed tree in a

6

routine inspection. <u>Middaugh</u>, 293 F.Supp. at 980. However, the Court found that the defendant failed to inspect the tree; that the defect was clearly visible; and, that it should have been discovered on a routine inspection. <u>Id.</u> In this case, the finder of fact rejected Plaintiffs' claims and thus the factual findings made by the Court in <u>Middaugh</u>, though permissible based upon the plaintiff's evidence were not required.

The circumstances of this case are tragic. Renee Messana indisputably suffered serious injuries through no fault of her own. Moreover, Plaintiffs' evidence, if accepted, could have supported a verdict for the plaintiffs. The jury, however, found that Plaintiffs failed to prove negligence on the part of the defendant after a fair trial uninfected by any claims of legal error and vigorously contested by all concerned. Other than Plaintiffs' understandable disagreement with the verdict, there is no basis for a new trial. The result is a hard one for Mrs. Messana, but the decision was for the jury.

The judgment rendered by the jury was within the province of the jury based upon the evidence in this case. On the evidence, it was permissible for the jury to conclude that the Plaintiffs failed to meet their burden of proof establishing the defendant's negligence, even though the tree fell, injuring Renee Messana. Indeed, the jury instructions specifically told the jury that while Defendant had "the duty to use ordinary care to insure that its property was reasonably safe from reasonably foreseeable dangers under the totality of the circumstances," it did not have the "obligation to guarantee Mrs. Messana absolute safety."[3] Hence, I deny the Motion for a New Trial. See <u>Ahern</u>, <u>supra</u>; <u>Rios v. Empresas Lineas Maritimas</u>, 575 F.2d 986, 990 (1st Cir. 1978) ("The district court should order a new trial only when convinced that a

---

[3] This quote comes from the Court's copy as delivered to the jury.

miscarriage of justice would otherwise obtain. Where credibility of witnesses is at issue, special care should be taken not to invade the province peculiarly pertaining to the jury.") The Motion for Judgment in Favor of the Plaintiffs is without merit under the legal standard applicable to that motion.

For the foregoing reasons, I DENY Plaintiffs' Renewed Motion for Judgment as a Matter of Law in its Favor or in the Alternative for a New Trial (Docket # 52). Defendant has filed a Bill of Costs (Docket # 54) seeking an Order directing Plaintiffs to pay its costs of $3,741.05. This unopposed request is ALLOWED. An Amended Final Judgment shall issue reflecting the award of costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States Magistrate Judge